LILLEHAUG, Justice
(dissenting).
Today the court disciplines an attorney for assisting his client, the alleged victim of a crime by a public employee, to negotiate a civil settlement during the pendency of a criminal case. I respectfully disagree with the majority’s conclusion that, by assisting his client, respondent Duane Kennedy engaged in conduct prejudicial to the administration of justice under Minn. R. Prof. Conduct 8.4(a) and 8.4(d). The referee’s theory of unethical behavior, advanced by the Director, is without sufficient factual support. Perhaps realizing this, the majority constructs and applies its own theory, but that theory is similarly without sufficient support.
I.
A lawyer can be disciplined only when a violation of the Rules of Professional Conduct has been shown by clear and convincing evidence. In re Nelson, 738 N.W.2d 458, 461 (Minn.2007). “In order to prove a claim by clear and convincing evidence, a party’s evidence should be unequivocal, intrinsically probable and credible, and free from frailties.” Gassler v. State, 787 N.W.2d 575, 583 (Minn.2010). In this case, a referee made findings and conclusions, and we will uphold those findings and conclusions unless they are clearly erroneous. See In re Gherity, 673 N.W.2d 474, 480 (Minn.2004). Even giving the referee great deference, his findings are clearly erroneous.[1]
This proceeding arises out of Kennedy’s representation of B.W., the alleged victim of criminal sexual conduct and misconduct by a public employee. B.W. had a color-able civil claim against the public employee.
On his client’s behalf, Kennedy sent three letters to the attorney who was defending the public employee in the pending *353 criminal case. The attorney shared the three letters with the prosecutor. As the majority recognizes, Kennedy’s alleged “misconduct consisted of three letters.” Thus, this proceeding turns on precisely what the three letters said — and on what they did not say.
The majority upholds the referee’s conclusion that, in those letters, Kennedy, on behalf of his client, offered that the client would not testify in the criminal proceeding in exchange for money. The referee reasoned that this would be accomplished by “defying expected court orders.” The problem for the referee and the majority is that nothing in the letters says that.
Neither the first letter nor the second letter says anything about Kennedy’s client not testifying. They do speak of the possibility of dismissal of the criminal case should a civil settlement be reached. But they do not promise a dismissal. Rather, the letters suggest that a dismissal “could” happen, without proposing a method.[2]
Unlike the first and second letters, the third letter does suggest a method by which the criminal charges could be dismissed: that if a civil settlement is reached, Kennedy’s client “may decide to ask the prosecutor to dismiss and he may decide to not testify against [the public employee].” Consider carefully the two segments of this sentence.
The first segment is that B.W. -“may decide” to ask the prosecutor to dismiss the criminal charges. The referee and the majority do not explain how, if at all, it was unethical for Kennedy to say this on behalf of his client., To be clear, neither Kennedy nor his client promised — nor could they — that the criminal case would be dismissed. A victim does not have the right to decide whether or not a criminal case should be pursued. A prosecutor represents the government, not the victim. See State v. Penkaty, 708 N.W.2d 185, 196 (Minn.2006) (“[A] prosecutor does not ‘represent’ the victim. A prosecutor represents the public interest and the sovereign and his goal is to see that justice is done.” (citation, omitted)).
Instead, Kennedy, for his client, suggested that the client “may decide to ask the prosecutor to' dismiss.” It is not unethical for an attorney, on behalf of his victim client, to offer to ask a prosecutor to dismiss a case, whether or not as part of a civil settlement. The majority cites no authority to suggest that it is. Indeed, our law makes clear that a crime victim always has the right to ask a prosecutor to pursue a criminal case or dismiss it. See, e.g., Minn.Stat. § 611A.08, subd. 1(2) (2014) (the victim has “the right ... to express orally or in writing, at the victim’s option, any objection to the [plea] agreement or to the proposed disposition”); Minn.Stat. § 611A.0301 (2014) (the victim has the right to express an objection at a plea presentation hearing); Minn.Stat. § 611A.031 (2014) (the victim of certain crimes has the right to input prior to pretrial diversion); Minn.Stat. § 611A.037, subd. 1 (2014) (the victim has the right, through the presentence investigation report, to opine on the disposition). And it has never been the law that an attorney commits misconduct when the attorney assists a client in offering “to refrain from pressing criminal charges in return for favors in a civil matter.” See ABA Comm, on Ethics & Profl Responsibility, Formal Op. 92-363 (1991) (neither the Model Rules *354 nor their predecessor prohibited such offers).[3]
The second segment of the sentence in the third letter suggests that, if the parties arrive at a civil settlement, Kennedy’s client “may decide to not testify against” the public employee. Again, the use of the term “may” shows that this is not a promise. If a civil settlement could be reached, Kennedy’s client “may” — or may not— choose not to testify. Neither the referee nor the majority cites any authority for the proposition that the exercise of such a choice (absent a subpoena or court order, of course) is unethical or unlawful. In the absence of lawful compulsion, every citizen in our country has the right to decide whether or not to testify. Cf Roseberry v. Hart-Parr Co., 145 Minn. 142, 146, 176 N.W. 175, 176 (1920) (holding that when a party did not subpoena a witness, and instead “saw fit to rely upon his promise to attend,” it “ran the risk of losing the benefit of his testimony if he failed to keep his promise”).
Going well beyond the plain language of the third letter, and without any testimonial support whatsoever, the referee concluded that Kennedy offered to advise his client to “defy[] expected court orders.” But the third letter does not reference any court orders, actual or potential. Indeed, when the third letter was sent, there was no outstanding subpoena or court order. So Kennedy’s client was under no legal obligation to attend any hearing or to testify. The straightforward reading of the second segment is that, to the extent that Kennedy’s client will have the choice (can “decide”), he “may” choose not to testify.
In any event, there is absolutely no evidence in the record — much less clear and convincing evidence — that Kennedy ever advised his client to defy a future subpoena or a court order. To the contrary, the only evidence is Kennedy’s own testimony that he never so advised his client, but counseled that, if the client invoked the Fifth Amendment and was granted immunity, the client would have to testify.
Thus, the referee’s conclusion that Kennedy offered that his client would defy a subpoena or court order, or advised his client to do so, is unsupported and thus clearly erroneous.
II.
Instead of imposing discipline on the theory of misconduct argued by the Director and adopted by the referee, the majority essentially imposes discipline on a different ground. The majority accomplishes this by picking out from the disciplinary hearing transcript a single question and answer. On direct examination, Kennedy agreed that, on behalf of his client, he offered to “settle [the client’s] civil lawsuit,” and in exchange his client would “essentially act more favorably for [the public employee] as a witness in the criminal case.”
From this single sentence, the majority somehow divines that Kennedy, on behalf of his client, offered, in the words of the majority, that the client’s “testimony in the criminal case would change and become more favorable to the defendant.” (Emphasis added). In other words,' the majority reads Kennedy’s answer as an admis *355 sion that Kennedy offered to have his client testify less than truthfully.
Even if the Director had charged Kennedy with conduct prejudicial to the administration of justice by offering to have his client’s testimony “change” or counseling his client to “change” testimony,[4] the majority would still have to leap a wide logical canyon. There is not a word in the third letter about Kennedy’s client changing his testimony, much less perjuring himself. Nor does Kennedy’s testimony support the theory that Kennedy was offering to have his client change his testimony or perjure himself. In so asserting, the majority quotes Kennedy’s answer entirely out of context. Kennedy was actually denying the Director’s theory:
Q. In your experience have you had civil cases that settled prior to the commencement of a lawsuit either the serving of a complaint or the filing of a complaint?
A. Many.
Q. Is that to the benefit do you believe of your client as well as to the other side?
A. Yes.
Q. So it is fair to say the theme of these three letters wasn’t, “Pay me off for not testifying.” It was, “Settle a civil lawsuit, and I will essentially act more favorably for you as a witness in the criminal case”?
A. That is [it] exactly.
Q. Is that uncommon in your experience as a defense lawyer for the victims to however they are made to feel better about the defendant’s conduct either the settling of a criminal lawsuit, showing remorse, writing a letter of apology for a victim to look more favorably upon the defendant and to put in a more favorable recommendation to the prosecutor?
A. I have seen it for almost forty years.
Fairly read, Kennedy’s testimony was that the letters did not demand a pay-off for his client not testifying, but instead sought a civil settlement that would lead to a “more favorable” victim recommendation to the prosecutor. There is absolutely no indication that Kennedy was offering or counseling perjury. The letters did not prejudice the administration of justice.
III.
While the tone of Kennedy’s letters is problematic at best and could be read as tip-toeing toward the ethical line, Kennedy did not clearly and convincingly cross the line. My hope is that the court’s holding in this unusual case has not inadvertently fuzzed what most attorneys understand to be a clear line on the extent to which they ethically may assist civil litigants (including crime victims) in making lawful choices and negotiating settlements during pending criminal proceedings.
For all of these reasons, this is not a case for discipline. I would therefore conclude that the referee’s findings and conclusions are clearly erroneous.

. The majority repeatedly, notes that Kennedy’s client demanded $300,000. This is a large number. But no attorney would be shocked that a claimant might make a sizable opening demand but settle for much less.

. See also 2008 N.C. Formal Ethics.Op. 15 (2009) ("Provided the settlement agreement does not constitute the criminal offense of compounding a crime, is not otherwise illegal, and does not contemplate the fabrication, concealment, or destruction of evidence (including witness testimony), a lawyer may participate in a settlement agreement of a civil claim that includes a provision that the plaintiff will not report the defendant's conduct to law enforcement authorities.”).

. Because the evidence does not clearly and convincingly prove the ground on which the majority imposes discipline, I need not consider the issue whether the majority opinion violates Kennedy's due process right to be given notice of the charges against him. See In re Taplin, 837 N.W.2d 306, 311 (Minn.2013); Gherity, 673 N.W.2d at 478.