STATE OF MINNESOTA

IN SUPREME COURT

A13-1963

Original Jurisdiction                                                                    Per Curiam

In re Petition for Disciplinary Action
against Mark Alan Greenman, a Minnesota                           Filed:  March 4, 2015
Attorney, Registration No. 228990.                                  Office of Appellate Courts

_____

Martin A. Cole, Director, Siama Y. Chaudhary, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Mark A. Greenman, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

An indefinite suspension from the practice of law with no right to petition for reinstatement for a minimum of 6 months is warranted for respondent's lengthy pattern of misconduct, including misrepresentation during an arbitration proceeding, pursuit of frivolous litigation, client neglect, incompetence, failure to attend court hearings and conferences, failure to pay court-ordered sanctions and a law-related debt, failure to timely return a client file, and failure to cooperate in the disciplinary process.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) filed a petition for disciplinary action and a supplementary petition for disciplinary action against Mark Alan Greenman in October 2013 and January 2014, alleging professional misconduct in eight matters. The petitions alleged that Greenman made a misrepresentation during an arbitration proceeding, pursued frivolous litigation on behalf of a client, disobeyed court rules, provided incompetent representation, failed to communicate with a client, failed to timely return a client file, neglected client matters, failed to appear at scheduled court hearings and conferences, failed to pay court-ordered sanctions and a law-related debt, and failed to cooperate with the disciplinary investigation. Following an evidentiary hearing, the referee found that Greenman committed the alleged misconduct, in violation of Minn. R. Prof. Conduct 1.1, 1.3, 1.4(a)(3), 1.4(b), 1.16(c), 1.16(d), 3.1, 3.2, 3.4(c), 8.1(b), 8.4(c), 8.4(d), and Rule 25, Rules on Lawyers Professional Responsibility (RLPR). The referee recommended that we indefinitely suspend Greenman from the practice of law for a minimum of 6 months. We agree with the referee's recommendation and indefinitely suspend Greenman from the practice of law with no right to petition for reinstatement for a minimum of 6 months.

I.

Greenman was admitted to the practice of law in Minnesota in 1992. He has not been the subject of prior discipline. The present disciplinary action involves professional misconduct in eight matters and Greenman's subsequent failure to cooperate with the

2

Director's investigation. While Greenman admits misconduct in some of the matters, he also makes numerous arguments challenging the referee's factual findings and conclusions that he violated the rules of professional conduct.[1] Because Greenman did not order a transcript of the disciplinary hearing, the referee's findings of fact and conclusions that Greenman's conduct violated the rules of professional conduct are conclusive. Rule 14(e), RLPR; *In re Montez*, 812 N.W.2d 58, 65-66 (Minn. 2012). The referee's findings and conclusions are summarized below.

### T.C. Matter

T.C. filed a pro se lawsuit against a business, his former employer, seeking compensation for services allegedly rendered when he worked there. T.C.'s former wife was a co-owner of the business. The business denied T.C.'s claims in its answer and served notice that it would seek reimbursement for all costs and expenses under Minn. Stat. § 549.211 (2014), because the claims were asserted in bad faith and without legal support. T.C. hired Greenman in March 2008 to represent him in the ongoing litigation. Greenman subsequently failed, multiple times, to follow the proper procedures to amend T.C.'s complaint.

Following a trial, the district court denied all of the claims. It found that T.C. pursued the lawsuit as a "vendetta" against his former wife; there was no evidence to support the claims; and the "futility" of the case should have been "readily apparent" upon reasonable discovery. The court also found that T.C.'s pursuit of the lawsuit

---

[1]     Greenman filed a brief with this court but did not participate in oral argument. He gave notice a day before oral argument that he would not be in attendance.

warranted "significant sanctions," noting that Greenman accepted his client's allegations as true without investigating the factual or legal underpinnings of the claims asserted.

The district court imposed sanctions of $15,000 against T.C. After Greenman made multiple procedural errors in the filing of the subsequent appeal, the court of appeals ultimately affirmed the district court's imposition of sanctions. The referee stated that it was "hard to imagine a case with more procedural errors than occurred here, made by an attorney who claims to specialize in litigation." Greenman's conduct in the T.C. matter violated the rules of professional conduct requiring a lawyer to provide competent representation (Minn. R. Prof. Conduct 1.1); to refrain from pursuing claims that are frivolous or not meritorious (Minn. R. Prof. Conduct 3.1); to refrain from knowingly disobeying the rules of a tribunal (Minn. R. Prof. Conduct 3.4(c)); and to refrain from engaging in conduct prejudicial to the administration of justice (Minn. R. Prof. Conduct 8.4(d)).

### B.J. Matter

B.J. retained Greenman in February 2009 to represent her in an employment lawsuit against her former employer for terminating her employment after she requested a leave of absence for surgery. During court-ordered arbitration, Greenman provided an electronic version of B.J.'s declaration to the arbitrator and opposing counsel, with an indication that B.J. had electronically signed it. At the arbitration hearing, "[B.J.] testified under oath that, among other things, she had not signed the declaration, was not certain that she had ever seen the declaration and that the declaration included at least one untrue statement." Specifically, B.J. testified that, contrary to the declaration, she had an

4

appointment with the surgeon to discuss the possibility of surgery, not that she needed surgery.

The arbitrator requested a detailed explanation of how B.J.'s declaration was prepared. Greenman e-mailed the arbitrator and stated that he had read the declaration to his client and she had confirmed its accuracy. He has since admitted that B.J. never electronically signed the declaration. Greenman later submitted a post-hearing memorandum, to which he attached another copy of B.J.'s declaration, including a new fax notation date, with B.J.'s handwritten signature below the electronic signature.

After issuing his determination and ruling for the employer, the arbitrator stated:

> It is extremely troublesome to this Arbitrator that a document, not signed by [B.J.], maybe never seen by [B.J.] and containing misstatement of facts, but purportedly sworn to by [B.J.] was submitted in this proceeding. It is also very troubling to this Arbitrator that in conjunction with filing her Post-Hearing Brief, [B.J.'s] counsel resubmitted the Declaration with [B.J.'s] signature on it, without any indication as to when or why she signed a statement which she testified under oath was not entirely true.

Greenman's conduct in the B.J. matter violated the rules of professional conduct prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation (Minn. R. Prof. Conduct 8.4(c)); and from engaging in conduct prejudicial to the administration of justice (Minn. R. Prof. Conduct 8.4(d)).

### P.R. Matter

P.R. retained Greenman in January 2009 to represent him in an ongoing sex discrimination lawsuit against a former employer. Nearly 5 months earlier, on August 12, 2008, the Minnesota Department of Human Rights (MDHR) had issued a finding of no probable cause and a 45-day right-to-sue letter to P.R. On September 3, 2008, the

U.S. Equal Employment Opportunity Commission adopted the MDHR's findings, dismissed P.R.'s charge, and notified him that he had 90 days to bring a lawsuit under Title VII. On December 1, 2008 (111 days after the MDHR had issued the 45-day right-to-sue letter), P.R., acting pro se, filed a lawsuit.

Although P.R.'s lawsuit alleging violations of state law was untimely, Greenman did not seek leave of court to amend the complaint to bring a discrimination claim under federal law until April 24, 2009. Further, on March 23, 2009, the opposing party served P.R. with requests for admissions, which Greenman never answered on P.R.'s behalf.[2] Greenman did not tell P.R. that he needed to respond to the requests for admissions or that the requests for admissions could be deemed admitted if P.R. failed to timely respond. The hearing on P.R.'s motion to add federal claims was scheduled for May 8, 2009. Greenman did not provide P.R. with a copy of the motion to amend the complaint and did not inform him of the date of the hearing on the motion to amend the complaint, in the event that P.R. wished to attend the hearing.

On April 30, 2009, 8 days before the hearing on the motion to amend the complaint, Greenman terminated his representation of P.R; he thus did not appear on P.R.'s behalf at the May 8 hearing. Greenman did not file a notice of termination with the state district court and thus remained P.R.'s counsel of record. The court denied P.R.'s motion to amend for "failure to prosecute," which prevented P.R. from timely

---

[2] Under Minn. R. Civ. P. 36.01, a "matter is admitted unless within 30 days after service of the request . . . the party to whom the request is directed serves upon the party . . . a written answer or objection."

6

alleging Title VII claims. The court ultimately granted the opposing party's motion to dismiss, concluding that the P.R.'s state law claims were untimely.

Greenman's conduct in the P.R. matter violated the rules of professional conduct requiring a lawyer to provide competent representation (Minn. R. Prof. Conduct 1.1); to act with diligence and promptness (Minn. R. Prof. Conduct 1.3); to keep a client informed and explain matters as reasonably necessary (Minn. R. Prof. Conduct 1.4(a)(3), (b)); to comply with the applicable law requiring notice to or permission of a tribunal when terminating a representation (Minn. R. Prof. Conduct 1.16(c)); to protect a client's interests after termination of representation (Minn. R. Prof. Conduct 1.16(d)); to expedite litigation (Minn. R. Prof. Conduct 3.2); to refrain from knowingly disobeying the rules of a tribunal (Minn. R. Prof. Conduct 3.4(c); and to refrain from engaging in conduct prejudicial to the administration of justice (Minn. R. Prof. Conduct 8.4(d)).

### *S.A. Matter*

S.A. provided court-reporting services to Greenman in January 2010. Despite repeated requests for payment, Greenman did not pay S.A.'s $493.25 bill for those services. S.A. eventually obtained a conciliation court judgment against Greenman that was not satisfied until February 2013, 3 years after the services were rendered. Greenman's conduct in the S.A. matter violated Minn. R. Prof. Conduct 8.4(d) (prohibiting lawyers from engaging in conduct prejudicial to the administration of justice).

*J.G. Matter*

After Greenman represented J.G. in an employment matter that settled, he stored the closed client file in the basement storage vault of the Minneapolis Grain Exchange. Beginning in May 2009 J.G. and her attorney made repeated requests for the return of the file. Greenman refused to return the file. Instead, he asserted that he did not have access to the file because of asbestos contamination, even though in January 2009 the vault tested negative for such contamination. After multiple unsuccessful requests for the return of the file, J.G. filed an ethics complaint against Greenman. In October 2010, more than 16 months after the initial request, Greenman informed J.G. that the files had been cleaned of asbestos and were available. Greenman's conduct in the J.G. matter violated Minn. R. Prof. Conduct 1.16(d) (requiring a lawyer to protect a client's interests after termination of representation by returning the client's papers and property).

*P.K., T.V., and D.T. Matters*

Greenman's representation of P.K., T.V., and D.T. involved similar misconduct: Greenman missed court deadlines and failed to attend scheduled hearings and conferences. In July 2013 Greenman failed to submit a settlement letter to the court in the P.K. matter and failed to attend a mandatory scheduling conference. During his representation of T.V., Greenman did not attend a court-ordered mediation session in September 2013. After opposing counsel filed a motion for sanctions and a revised mediation order, Greenman did not file a response or attend the hearing on the motion. The court ordered Greenman to pay $500 to the mediator and $522 in costs to the opposing party. Greenman has failed to pay the sanctions. In November 2013 Greenman

appeared for the hearing on the opposing party's summary judgment motion, but told the court that he was unprepared because he had been at an out-of-state chemical dependency residential treatment program. Finally, Greenman did not attend a hearing on opposing counsel's motions to dismiss and for summary judgment in the D.T. matter.

Greenman's conduct in the P.K., T.V., and D.T. matters violated the rules of professional conduct requiring lawyers to act with diligence (Minn. R. Prof. Conduct 1.3); to expedite litigation (Minn. R. Prof. Conduct 3.2); to refrain from knowingly disobeying the rules of a tribunal (Minn. R. Prof. Conduct 3.4(c)); and to refrain from engaging in conduct prejudicial to the administration of justice (Minn. R. Prof. Conduct 8.4(d)). Additionally, in the P.K. matter, Greenman violated Minn. R. Prof. Conduct 1.1 (requiring competent representation).

### *Failure to Cooperate*

Beginning in May 2013, Greenman failed to respond to the notices of disciplinary investigation in five matters or to the Director's requests for additional information and documents related to those investigations. Greenman did call the Director in mid-October 2013 to tell him that he was at an in-patient chemical dependency treatment center and would be unable to respond until mid-November 2013, when he completed treatment. At the time the supplementary petition was filed, which was 2 months after Greenman was released from treatment, he had not responded to the Director's notice of investigation in any of these five matters. Greenman's noncooperation in these investigations violated Minn. R. Prof. Conduct 8.1(b), prohibiting a lawyer from

9

knowingly failing to respond to a lawful demand for information in a disciplinary matter, and Rule 25, RLPR, requiring lawyers to cooperate with disciplinary investigations.

## II.

We first address Greenman's claim that he was treated unfairly during the disciplinary proceedings. When we exercise "disciplinary jurisdiction, the action . . . is neither criminal nor civil; rather, it is an inquiry . . . to determine if sanctions should be imposed." *In re Garcia*, 792 N.W.2d 434, 441 (Minn. 2010); *see also In re Rerat*, 224 Minn. 124, 128, 28 N.W.2d 168, 172 (1947). While "disciplinary proceedings are not encumbered by technical rules and formal requirements, this court observes due process in exercising disciplinary jurisdiction." *In re Gherity*, 673 N.W.2d 474, 478 (Minn. 2004). The disciplinary charges must "be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense" at the disciplinary hearing. *Id.*

Greenman argues he was left deliberately uninformed by the Director about the scope of the disciplinary hearing and the nature of certain charges levied against him, insisting that he was "[led] to believe that the Board had abandoned many of its allegations."[3] There is no support in the record for this claim. The disciplinary charges

---

[3] Greenman also contends the referee "was nothing more than a rubber stamp" of the Director's allegations of misconduct. Greenman's sole basis for this claim is that the referee "did not ask [him] a single question" about the alleged misconduct during the evidentiary hearing. In disciplinary proceedings, a referee is charged with "hear[ing] and report[ing] the evidence submitted for or against the petition for disciplinary action" and with making "findings of fact, conclusions, and recommendations" regarding the disposition of the case. Rule 14(a), (e), RLPR. Nothing in the applicable rules requires a

(Footnote continued on next page.)

10

against Greenman were thorough and specific: Greenman was served with both a 17-page petition and an 8-page supplementary petition. Both petitions identify the specific rules of professional conduct that Greenman was alleged to have violated and provide factual details to support those allegations. Greenman identifies nothing in the record indicating that the Director "abandoned" any of these charges and his insistence to the contrary is puzzling.

Greenman further contends that he did not bring witness B.J. to testify on his behalf because he had been "hornswoggled" by the Director, who allegedly told him during the evidentiary hearing that the Director was no longer pursuing the charges in that matter. This allegation, which the Director denies, is also baseless. Greenman points to nothing in the record that suggests, let alone supports, a claim of abandonment of this allegation of misconduct.

Moreover, the record in this case does not support Greenman's claim that he intended to call B.J. as a witness. In spite of a scheduling order that required the disclosure of witnesses and exhibits, Greenman did not provide a witness list or an exhibit list before the hearing. Instead, the record indicates Greenman was unprepared for the hearing. The referee noted that "[a]t the hearing, [Greenman] borrowed a copy of the proposed exhibits because he failed to bring his copy with him, and he borrowed a

---

(Footnote continued from previous page.)
referee to ask a respondent questions during the evidentiary hearing. *See* Rule 14, RLPR. In any event, we cannot assess the factual basis of this claim because Greenman did not order a transcript.

pen from the court reporter." Greenman also "submitted no exhibits and presented little evidence in defense of his conduct despite being given every opportunity to do so."

In sum, Greenman "had the opportunity at the hearing to present evidence on his own behalf, to cross-examine witnesses testifying against him, and to present evidence of good character and mitigating circumstances." *Garcia*, 792 N.W.2d at 441. His claims that the hearing and the disciplinary process were unfair are meritless.

III.

The only remaining question is the appropriate discipline for Greenman's professional misconduct. The referee recommended that Greenman receive an indefinite suspension from the practice of law for a minimum of 6 months, with the requirement that he petition for reinstatement pursuant to Rule 18, RLPR. The Director agrees with this recommendation.

Although we give "great weight" to the referee's recommendation, we maintain the ultimate responsibility for determining the appropriate sanction. *In re Karlsen*, 778 N.W.2d 307, 311 (Minn. 2010). The purpose of disciplinary sanctions is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). The four factors that guide this court's imposition of discipline are: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). Aggravating and mitigating circumstances are also considered. *In re Harrigan*, 841 N.W.2d 624, 629

(Minn. 2014). While this court looks to similar cases for guidance on the appropriate discipline, we tailor the discipline to the specific facts of each case. *Id.*

A. *Nature of the Misconduct*

We first consider the nature of Greenman's misconduct. Greenman committed substantial and varied misconduct in eight different matters. Much of Greenman's misconduct in these matters can be generally categorized as client neglect and incompetence. Greenman failed to communicate with a client, promptly return a client file, act competently and diligently in multiple client matters, appear for scheduled hearings and conferences, and obey court rules. A "continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself when no evidence of mitigating circumstances is present." *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005); *see also In re Letourneau*, 792 N.W.2d 444, 452 (Minn. 2011).

In addition, Greenman's misconduct in the B.J. matter involved dishonesty: Greenman stated during an arbitration that his client had electronically signed the declaration that Greenman submitted on her behalf when, in fact, she had not signed the declaration, much less read it. "[M]aking misrepresentations demonstrates a lack of honesty and integrity, and warrants severe discipline." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012); *see also In re Houge*, 764 N.W.2d 328, 338 (Minn. 2009) ("A lawyer's duty of candor to the court goes to the core of preserving the soundness of the justice system."). We have routinely suspended attorneys for making misrepresentations to a tribunal. *In re Aitken*, 787 N.W.2d 152, 163 (Minn. 2010) (suspending an attorney for 90 days for forging a client's signature on a plea petition and noncooperation with the

Director's investigation); *In re Zotaley*, 546 N.W.2d 16, 17 (Minn. 1996) (imposing a 6-month suspension for an attorney who submitted a misleading document in a no-fault insurance arbitration).

Greenman's misconduct also involves pursuing a frivolous claim in the T.C. matter. Submitting frivolous claims is sanctionable conduct. *See In re Tieso*, 396 N.W.2d 32, 34 (Minn. 1986) (imposing a 3-month suspension for filing a single frivolous, vexatious lawsuit).

Finally, Greenman failed to cooperate with the Director's investigations of five complaints. We have stated that "noncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *Nelson*, 733 N.W.2d at 464. Thus, the nature of Greenman's misconduct was serious, and his lack of cooperation increases the severity of the sanction.

### B. *Cumulative Weight of the Disciplinary Violations*

We next consider the cumulative weight of Greenman's disciplinary violations. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). We have distinguished "a brief lapse in judgment or a single, isolated incident" of misconduct from "multiple instances of mis[conduct] occurring over a substantial amount of time." *In re Fairbairn*, 802 NW.2d 734, 743 (Minn. 2011) (citation omitted) (internal quotation marks omitted).

14

In addition to failing to cooperate, Greenman committed multiple types of professional misconduct in eight separate matters that constituted a violation of 13 separate provisions of the rules. Moreover, Greenman's rule violations were committed over an extended period of time, with misconduct occurring between 2008 through 2013. Greenman's misconduct constitutes more than a "brief lapse in judgment" or a "single, isolated incident."

### C.     Harm to the Public and the Legal Profession

In determining the proper discipline to impose, we also consider the harm to the public and the legal profession. This includes consideration of "the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (citation omitted) (internal quotation marks omitted). Greenman's misconduct directly caused harm to his clients and the legal profession on multiple fronts.

Most troubling are Greenman's actions in the P.R. matter. Greenman's failure to notify the court of his withdrawal, to inform P.R. of the hearing date, and to appear on P.R.'s behalf harmed his client's legal position. As a result of Greenman's misconduct, P.R.'s claim was dismissed for failure to prosecute, even though his federal-law claims would have been timely. As the Director stated, Greenman "effectively deprived [P.R.] of his day in court."

D.T., T.V., and P.K. also were harmed because their matters were unnecessarily delayed by Greenman's failure to appear at hearings and conferences in their cases. *In re Nathanson*, 812 N.W.2d 70, 79 (Minn. 2012) (explaining that even if the misconduct does not "jeopardize a client's legal position, a lawyer's procrastination, neglect, and

failure to communicate with a client 'are intensely frustrating to the client' " (quoting *In re Albrecht*, 779 N.W.2d 530, 541-42 (Minn. 2010)). While S.A. was not a client, Greenman's failure to pay a law-related debt for 3 years harmed S.A., who was forced to take legal action against Greenman to get paid.

Greenman's neglect of these cases and corresponding lack of compliance with court rules caused "the needless expenditure of judicial resources and the resources of opposing counsel, which harmed the legal profession." *Albrecht*, 779 N.W.2d at 542. Greenman's pursuit of T.C.'s frivolous, "vendetta" litigation harmed the judicial system and the opposing party. *In re Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011) ("Frivolous claims are a waste of the court's resources."). The appellate courts also wasted limited judicial resources responding to the multiple deficiencies in Greenman's filings in T.C's appeals. In the end, Greenman's misconduct caused harm not only to his clients, but also to the courts, the general public, and the legal profession.

### D. Aggravating and Mitigating Circumstances

We also consider aggravating and mitigating circumstances when determining the appropriate discipline for attorney misconduct. *See In re Haugen*, 543 N.W.2d 372, 375 (Minn. 1996). The referee determined that there are numerous aggravating factors and no mitigating circumstances in this case.

Greenman claims alcohol dependency in mitigation of the sanctions for the 2013 misconduct (P.K., T.V., D.T., and noncooperation) and points to his stay at a chemical-dependency treatment center in California as proof of an "alcohol-induced depression that rendered [him] virtually incapacitated." But the referee determined that Greenman

16

did not meet his burden of proof with respect to his potential alcohol-dependency-mitigation claim and "offered no other evidence to support a legally recognized claim of mitigation." Again, because Greenman did not request a transcript of the hearing, the referee's findings are conclusive, so there are no mitigating factors for us to consider. *In re Montez*, 812 N.W.2d 58, 67 (Minn. 2012) (concluding that the court would not review the referee's findings regarding mitigating factors when a transcript was not ordered).

Not only are there no mitigating circumstances, the referee concluded that there are numerous aggravating factors. Among them, Greenman committed numerous, repeated acts of intentional professional misconduct over an extended period of time, spanning multiple matters. *See Ulanowski*, 800 N.W.2d at 802 ("[c]ommitting multiple acts of misconduct over a long period of time is an aggravating factor"). The referee concluded that Greenman's conduct at the disciplinary hearing—namely, failing to comply with discovery or to provide a witness and exhibit list—"indicate[d] a complete lack of concern about procedural rules" and should be considered as an aggravating circumstance. In addition, Greenman's general failure to exhibit remorse, his continued insistence that others, but not himself, were responsible for his misconduct, and his lack of recognition of the damage done to his clients by his actions all aggravated the misconduct here. *See In re Rooney*, 709 N.W.2d 263, 271 n.4 (Minn. 2006) (noting that a lack of remorse aggravates the misconduct).

Therefore, consistent with our prior decisions and the specific circumstances of this case, we conclude that an indefinite suspension is the appropriate discipline in light of Greenman's extensive misconduct. We agree with the referee's conclusion that

17

Greenman should not be practicing law at this time. Having considered the nature of the misconduct in this case, the aggravating factors, and the purposes of attorney discipline, we hold that the appropriate sanction for Greenman's misconduct is an indefinite suspension for a minimum of 6 months.

Accordingly, we order that:

1. Respondent Mark Alan Greenman is indefinitely suspended from the practice of law, effective 14 days after the filing of this opinion, and he shall be ineligible to petition for reinstatement for a minimum of 6 months from the effective date of the suspension.

2. Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. Prior to seeking reinstatement, respondent must pay the $1,022 in court-ordered sanctions and costs in the T.V. matter.

4. If respondent seeks reinstatement, he must comply with the requirements of Rule 18(a)-(e), RLPR.

5. Respondent shall pay $900 in costs, plus disbursements, pursuant to Rule 24, RLPR.