**IN RE Petition for DISCIPLINARY ACTION AGAINST Steven Michael O'BRIEN, a Minnesota Attorney, Registration No. 0389745.**

A15-2042

Supreme Court of Minnesota.

Filed: May 3, 2017

Susan M. Humiston, Director, Binh T. Tuong, Megan Engelhardt, Assistant Directors, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Steven Michael O'Brien, Solana Beach, California, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility served Steven O'Brien with a petition for disciplinary action after he failed to appear on behalf of his client and exhibited other misconduct in handling the client's matter. O'Brien did not respond to the petition. On the Director's motion, we deemed the allegations in the petition admitted. Shortly thereafter, we granted the Director's motion to suspend briefing to allow for investigation of an additional complaint. After this investigation, the Director filed a supplemental petition for disciplinary action, alleging that O'Brien misappropriated over $300,000 from funds held in trust for a beneficiary. O'Brien filed an answer to the supplemental petition, and we referred the matter to a referee. The referee recommended that O'Brien be disbarred. We agree that the appropriate discipline in this case is disbarment.

## FACTS

The facts of the case are not in dispute.[1] In April 2012, O'Brien agreed to represent D. F. in a lawsuit against an automobile repair service. D.F. provided O'Brien with documents relevant to the lawsuit and an advance in the amount of $750. During the course of the representation, D.F. paid O'Brien $1,700 for fees and costs. In the months after he was retained, O'Brien prepared a summons and complaint, served these documents on the defendant, and filed them with the district court. O'Brien also prepared and served discovery requests on the defendant. The district court subsequently scheduled a date for a pretrial conference and established dates for pretrial disclosure of witnesses, exhibits, and other trial materials.

During O'Brien's representation of D.F., O'Brien continually failed to respond to D.F.'s telephone and e-mail messages. On September 12, 2014, O'Brien failed to appear for the scheduled pretrial conference and failed to file the pretrial disclosures ordered by the district court. On September 26, the court ordered O'Brien to pay $750 as a sanction for failing to appear at the pretrial conference. Although the district court directed that the sanction be paid within ten days, O'Brien paid it in $250 monthly installments from January through March 2015.

Trial was scheduled to start on Monday, October 6, 2014. On Friday, October 3, O'Brien notified D.F., by letter, that he would no longer represent him. Because O'Brien withdrew from the representation, D.F. appeared at the trial pro se. The district court denied D.F.'s request for additional time to obtain new counsel. The district court dismissed the lawsuit with prejudice and ordered D.F. to pay $522 for the defendant's costs and disbursements. After O'Brien withdrew from the representation, D.F. asked O'Brien to return the file to him. O'Brien failed to do so.

1. Neither party ordered a transcript of the proceedings before the referee. Our recitation of the facts is taken from the referee's factual findings and conclusions. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR) (stating that when no transcript is ordered, the referee's findings of fact and conclusions shall be conclusive).

In December 2014, D.F. submitted a complaint to the Director against O'Brien. The Director and the investigator for the District Ethics Committee requested information and responses from O'Brien, by letters and by phone, on multiple occasions. O'Brien did not respond to these inquiries.[2] On September 24, 2015, the Director filed a petition for disciplinary action against O'Brien based on the D.F. complaint. O'Brien did not file an answer to the petition. We therefore granted the Director's motion for summary relief and deemed the allegations in the petition admitted. Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR) (stating that the allegations of a complaint are deemed admitted if a respondent fails to answer within the time provided to do so). Shortly thereafter, we granted the Director's motion to suspend briefing to allow her to investigate an additional complaint.

The Director's additional investigation related to allegations regarding O'Brien's failure to account for funds in a trust for which he served as trustee. Specifically, O'Brien was appointed as the sole successor trustee of the revocable trust agreement of M.J. after M.J. died in 2013. The beneficiary of the trust was the Order of St. Benedict, St. John's Abbey (the Abbey). In March 2014, O'Brien established a trust checking account at U.S. Bank; he was the only person authorized to conduct transactions on the account. On September 23, 2014, O'Brien deposited $190,090.13 into the account, representing the proceeds from the sale of M.J.'s residence. O'Brien withdrew $903 in cash when he made this initial deposit. Between September 2014 and March 2015, O'Brien issued and endorsed checks from the trust checking account to himself or his law firm. The total sum misappropriated from the bank account, including fees, was $191,368.78.

The trust also was the sole owner of a brokerage account that O'Brien, as the trustee, controlled from January 2014 to July 2015. During this period, O'Brien made 40 wire transfers from the brokerage account without providing an accounting of these transactions. The total amount transferred from the brokerage account, including fees, was $137,051.67. Taken together with the funds misappropriated from the bank account, O'Brien misappropriated $328,420.45 from the trust.

The Director asked O'Brien to respond to the complaint about his misappropriation of trust funds, but he failed to do so. The Director then filed a supplemental petition for disciplinary action against O'Brien in February 2016. O'Brien filed an answer to the supplemental petition, denying the allegations that he wrongfully misappropriated funds from the trust. We referred the matter to a referee. After repeated failed attempts to contact O'Brien and include him in the proceedings, and O'Brien's failure to respond to the discovery served on him, the referee granted the Director's motion to strike O'Brien's answer and deemed the allegations in the supplemental petition admitted. Following a hearing at which O'Brien failed to appear, the referee made findings of fact and conclusions of law, and recommended that O'Brien be disbarred.

We then granted the Director's motion for interim suspension, see Rule 16(e), RLPR (stating that a lawyer's license

"shall be suspended pending final determination" when a referee recommends disbarment), and directed the parties to file briefs. O'Brien did not file a brief and did not appear for oral argument.

## ANALYSIS

Because the allegations in the petition and supplemental petition for disciplinary action have been deemed admitted, the only issue before us is the appropriate discipline for O'Brien's admitted misconduct. *See In re Swensen*, 743 N.W.2d 243, 246-47 (Minn. 2007). We give "significant weight" to the referee's recommendation for discipline, but "we are the 'sole arbiter of the discipline to be imposed.'" *In re Voss*, 830 N.W.2d 867, 877 (Minn. 2013) (quoting *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010)). "The purpose of attorney discipline 'is not to punish the attorney,'" but to protect the public and the judicial system as well as " 'deter future misconduct.'" *In re Riehm*, 883 N.W.2d 223, 233 (Minn. 2016) (quoting *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010)). We consider four factors in determining the appropriate disciplinary sanction: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007) (citing *In re Jagiela*, 517 N.W.2d 333, 335 (Minn. 1994)). We also consider aggravating and mitigating circumstances. *Rebeau*, 787 N.W.2d at 176. Finally, we consider the discipline imposed in "similar cases in an effort to impose consistent discipline." *Albrecht*, 779 N.W.2d at 540 (citing *In re Bishop*, 582 N.W.2d 261, 263 (Minn. 1998)).

First, we consider the nature of the misconduct. *Nelson*, 733 N.W.2d at 463. Misappropriation of trust funds is serious misconduct, *see In re Isaacs*, 451 N.W.2d 209, 211 (Minn. 1990), that has resulted in the disbarment of attorneys who breached the fiduciary duty owed to a non-client beneficiary of a trust, *see, e.g., In re Moe*, 851 N.W.2d 868, 872 (Minn. 2014) ("We have disbarred attorneys who misappropriated funds from non-clients to whom they owed a fiduciary duty."). "Repeated neglect of client matters" and "failure to communicate with clients" also is serious and typically results in indefinite suspension by itself. *In re Grzybek*, 567 N.W.2d 259, 263 (Minn. 1997). Noncooperation with attorney discipline proceedings is an additional ground for discipline that can warrant indefinite suspension. *In re Engel*, 538 N.W.2d 906, 907 (Minn. 1995).

Here, O'Brien's most serious violation was misappropriating over $300,000 from the M.J. trust. He committed this misconduct in his role as a trustee, thus violating the fiduciary duty he owed to the beneficiary of the trust. He also failed to adequately represent D.F., to respond to D.F.'s attempts to contact him, and to return D.F.'s files. Furthermore, O'Brien has not cooperated with the attorney discipline proceedings, except to file an answer to the supplemental petition (which was later stricken). Any one of these violations would be sufficiently serious to warrant severe discipline.

Next, we consider the cumulative weight of the violations. *Nelson*, 733 N.W.2d at 463. In evaluating this factor, we have considered the number of rules violated and whether the misconduct was a single, isolated incident or a brief lapse of judgment. *See In re Glasser*, 831 N.W.2d 644, 648 (Minn. 2013) (acknowledging that although only one rule was violated, Glasser's "misconduct was neither a single, isolated incident nor a brief lapse in judgment"); *In re Wentzel*, 711 N.W.2d 516, 521 (Minn. 2006) (concluding that 30 instances of misappropriation over 2 years aggravated the severity of the

misconduct); *In re Rooney*, 709 N.W.2d 263, 269 (Minn. 2006) (concluding that 17 instances of misappropriation over the course of one year warranted a more severe sanction). Here, O'Brien committed several distinct forms of misconduct by misappropriating funds from the M.J. trust; neglecting his client, D.F., and the client's matter; and failing to cooperate with the Director's investigation. In addition, the misappropriation of funds from the M.J. trust occurred over a 1-year period, included over 40 transactions, and depleted two separate accounts held by the trust. Through this misconduct, O'Brien violated nine Minnesota Rules of Professional Conduct and one Rule on Lawyers Professional Responsibility, RLPR.[3] Accordingly, the cumulative weight of O'Brien's violations is significant and warrants severe discipline.

 Next, we consider the harm to the public. *Rebeau*, 787 N.W.2d at 173. Even when an attorney returns money that was misappropriated, which did not occur here, "[m]isappropriation of any kind, by its very nature, harms the public at large." *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011). In evaluating the harm to the public, we also consider "'the number of clients harmed [and] the extent of the clients' injuries.'" *In re Greenman*, 860 N.W.2d 368, 377 (Minn. 2015) (quoting *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011)). Misconduct that leads to the dismissal of a client's action, thereby depriving the client of his day in court, is serious. *See id.*

Here, the Abbey, the trust's beneficiary, lost over $300,000 from the trust due to O'Brien's misconduct. In addition, the Abbey spent approximately $36,000 in legal

and accounting fees to address O'Brien's actions. There is no evidence that O'Brien has returned any portion of the misappropriated funds. The harm to the Abbey is obvious and significant.

In addition, O'Brien harmed D.F. by abruptly withdrawing from the representation and leaving his client without the ability to secure new counsel in time for trial. Indeed, D.F.'s request on the day of trial for a continuance was denied. His case was then dismissed with prejudice, effectively depriving him of his day in court. He was also ordered to pay the defendant's costs and disbursements. D.F.'s communications with O'Brien, during his representation and after O'Brien withdrew, were ignored. The harm to D.F. was great.

 Next, we consider the harm to the legal profession. *Greenman*, 860 N.W.2d at 376-78. Misappropriation harms the legal profession because it "is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *Fairbairn*, 802 N.W.2d at 743. Neglect of client matters also "'undermines public confidence in the legal profession.'" *Albrecht*, 779 N.W.2d at 542 (quoting *In re Keate*, 488 N.W.2d 229, 235 (Minn. 1992)). Finally, failure to cooperate with the disciplinary investigations and process "undermin[es] the integrity of the attorney disciplinary system" and "weakens the public's perception of the legal profession's ability to self-regulate." *In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014) (citations omitted) (internal quotation marks omitted). Here, O'Brien's multiple instances of misconduct erode the public's confidence in lawyers and the legal profession.

---

**3.** O'Brien violated Minn. R. Prof. Conduct 1.3, 1.4(a)(3), 1.4(a)(4), 1.16(d), 3.2, and 3.4(c) through his conduct in the D.F. matter. He violated Minn. R. Prof. Conduct 8.4(b) and 8.4(c) through his conduct regarding the M.J. trust. He violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR, by failing to cooperate with the disciplinary proceedings.

Finally, we consider the discipline imposed in similar circumstances to ensure consistency in our decisions. *Albrecht*, 779 N.W.2d at 540. We have repeatedly disbarred attorneys who misappropriate funds from non-clients to whom they owed a fiduciary duty. *See In re Mayne*, 783 N.W.2d 153, 156 (Minn. 2010) (disbarring an attorney who misappropriated $60,000 from her father's bank account while acting as his attorney-in-fact); *In re Amundson*, 643 N.W.2d 280, 280-81 (Minn. 2002) (order) (disbarring an attorney who, while serving as trustee, misappropriated over $400,000 from a trust established for the benefit of a disabled woman); *In re Olson*, 358 N.W.2d 662, 663-64 (Minn. 1984) (disbarring an attorney who transferred the assets of his comatose relative to himself while acting by power of attorney on the relative's behalf). Thus, based on O'Brien's misappropriation alone, disbarment is warranted. Disbarment is further supported by O'Brien's neglect of his client and non-cooperation with the disciplinary proceedings. We conclude that disbarment is appropriate here.[4]

### CONCLUSION

1. For the foregoing reasons, respondent Steven Michael O'Brien is disbarred from the practice of law in the State of Minnesota, effective upon the date of the filing of this opinion.

2. Respondent shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals), and shall pay $900 in costs, *see* Rule 24(a), RLPR.

Disbarred.

---

4. There are no mitigating factors here, and in light of the misappropriation, client neglect, failure to cooperate with the disciplinary proceedings, and conclusion that disbarment is appropriate, further analysis of aggravating factors, if any, is unnecessary.