PER CURIAM.
The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action and two supplementary petitions for disciplinary action against George E. Hulstrand, Jr. After an evidentiary hearing, the referee found, among other things, that Hulstrand misappropriated client funds, failed to safeguard *439 client funds, neglected client matters, made false statements to a tribunal, failed to follow court orders, and failed to cooperate with disciplinary investigations. The referee recommended that we disbar Hulstrand. The only issue before us is the appropriate discipline to impose for Hulstrand's professional misconduct. We conclude that it is disbarment.
FACTS
George E. Hulstrand, Jr., is a general practitioner in Willmar; he has been licensed to practice law in Minnesota since 1976. Hulstrand has been disciplined on four prior occasions for similar types of misconduct. He received three private admonitions in 2002, 2010, and 2012 for neglecting client matters, failing to communicate with clients, violating trust account rules, and failing to appear for hearings. He was also publicly reprimanded in 2008 for lacking competence, improperly withdrawing from representation, failing to communicate with clients, and failing to appear for hearings. See In re Hulstrand , 757 N.W.2d 690 (Minn. 2008) (order).
This disciplinary action involves professional misconduct based on violations of 18 rules in 13 client matters over 4 years, as well as Hulstrand's subsequent failure to cooperate with disciplinary investigations. We summarize his misconduct below.
Misappropriation of Client Funds
Hulstrand misappropriated the funds of two clients, violating Rules 1.15(a)[1] and 8.4(c) 2 of the Minnesota Rules of Professional Conduct. Each client gave Hulstrand a filing fee, $335 and $350 respectively, so that Hulstrand could file their bankruptcy actions. He deposited their filing fees into his business account and then used their filing fees for his own expenses and purposes other than filing their bankruptcy actions. Even though Hulstrand never filed one client's bankruptcy action, he refused to refund the filing fee.
Failing to Safeguard Client Funds and Return Unearned Fees
Hulstrand failed to safeguard client funds in seven client matters,[3] violating Rules 1.5(b)(1),[4] 1.15(a), and 1.15(c)(5) 5 of the Minnesota Rules of Professional Conduct. Hulstrand deposited a total of $4,070 of clients' funds, ranging from $200 to $1,350, into his business account rather than a trust account. He also failed to return unearned legal fees to his clients in three client matters, violating Rules 1.15(c)(4)[6] and 1.16(d) 7 of the Minnesota Rules of Professional Conduct.
*440 Neglecting Client Matters and Failing to Communicate with Clients
Hulstrand failed to perform work on seven client matters and failed to communicate with clients in eight matters, violating Rules 1.1,[8] 1.3,[9] 1.4(a)(3)-(4),[10] and 3.2 11 of the Minnesota Rules of Professional Conduct. He repeatedly failed to work competently or diligently on seven client matters. For example, in one matter, Hulstrand took over a year to file his clients' bankruptcy action, and when he did file, he failed to file the necessary paperwork, which caused the court to dismiss the action. Hulstrand failed to successfully file this bankruptcy action and another client's bankruptcy action. These clients were forced to hire new counsel, who completed their bankruptcy actions.
Additionally, Hulstrand failed to appear at a criminal proceeding involving another client. He did not tell this client that he would not attend. This omission forced this client to appear without counsel and the court to continue the matter.
In another matter, Hulstrand represented a vulnerable adult in a civil case arising out of the sale of real property. The opposing party filed a counterclaim, but Hulstrand failed to reply to the counterclaim. The court granted default judgment against the client for $44,274.53. The client hired a new attorney to appeal the default judgment. The new attorney successfully argued to the court of appeals that Hulstrand's representation was "egregiously inadequate" and obtained a reversal of the default judgment.
Hulstrand also failed to communicate with clients in eight matters. After accepting fees from clients, he often failed to return client calls for months on end. For example, one client attempted to contact Hulstrand for 9 months without success, while other clients, a couple, struggled to communicate with Hulstrand over the 3 years that he claimed to be assisting them in filing their bankruptcy action. In another matter, Hulstrand failed to forward a negative court ruling to his client until he was prompted to do so, which was 2 weeks after the ruling.
Making a False Statement to a Tribunal
Hulstrand made a false statement to a court, violating Rules 3.3(a)(1),[12] 4.1,[13] and 8.4(c) of the Minnesota Rules of Professional Conduct. Hulstrand attended a criminal proceeding on his client's behalf, but his client did not appear for the hearing. When the judge asked Hulstrand *441 about his client's absence, Hulstrand falsely told the judge that he had informed opposing counsel that his client may not be coming to that day's hearing. In fact, he never told opposing counsel that his client would be absent from the hearing.
Failing to Comply with Court Orders and Rules
Hulstrand failed to comply with court orders and rules in three client matters, violating Rules 1.1, 1.3, 3.1,[14] 3.4(c)-(d),[15] and 8.4(d) 16 of the Minnesota Rules of Professional Conduct. As previously noted, he failed to reply to a counterclaim and discovery requests, which caused the court to enter a default judgment for over $44,000 against the client. In another matter, the district court sanctioned Hulstrand for filing a frivolous motion and failing to obey an order that sought to prevent the assertion of frivolous claims. And, as previously noted, Hulstrand filed his clients' bankruptcy actions but failed to file the necessary supporting documents. The court then ordered his clients to produce the necessary documents. Hulstrand failed to file the documents on their behalf and failed to file a request for an extension to file.
Failing to Cooperate with the Director's Disciplinary Investigations
Hulstrand failed to cooperate with the Director's disciplinary investigations, violating Rule 8.1 17 of the Minnesota Rules of Professional Conduct and Rule 25 18 of the Rules on Lawyers Professional Responsibility (RLPR). Between 2015 and 2016, he repeatedly failed to respond or timely respond to the several complaints filed against him. And when Hulstrand did reply, he failed to provide substantive responses to the complaints.
Following an evidentiary hearing, the referee concluded that Hulstrand committed the misconduct that was alleged in the petition and two supplementary petitions. The referee found several aggravating factors and no mitigating factors. The referee recommended that we disbar Hulstrand.
After the referee recommended disbarment, we temporarily suspended Hulstrand pending final resolution of this matter. See Rule 16(e), RLPR. We issued a briefing order, but Hulstrand did not file a brief. He also did not appear for oral argument.
*442 ANALYSIS
Because no party ordered a transcript from the disciplinary hearing, the referee's findings of fact and conclusions of law are conclusive, and the only issue before us is the appropriate discipline to impose. See Rule 14(e), RLPR ; In re Greenman , 860 N.W.2d 368, 371 (Minn. 2015). The referee recommended disbarment. "Although we give 'great weight' to the referee's recommendation, we maintain the ultimate responsibility for determining the appropriate sanction." Greenman , 860 N.W.2d at 376 (citation omitted).
The purpose of attorney discipline "is not to punish the attorney, but rather to protect the public [and] the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." In re Fairbairn , 802 N.W.2d 734, 742 (Minn. 2011) (citation omitted) (internal quotation marks omitted). Four factors guide our discipline determination: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." In re Nelson , 733 N.W.2d 458, 463 (Minn. 2007). We also consider aggravating and mitigating circumstances, as well as the discipline imposed in similar cases. See In re Tigue , 900 N.W.2d 424, 431 (Minn. 2017). We look to similar cases to guide our discipline determination, but we "tailor the discipline to the specific facts of each case." Greenman , 860 N.W.2d at 376.
A.
We first consider the nature of Hulstrand's misconduct, which is serious and extensive. Hulstrand's misappropriation of two clients' funds, totaling $685, by itself, "is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." In re Garcia , 792 N.W.2d 434, 443 (Minn. 2010) (citation omitted) (internal quotation marks omitted). Misappropriation occurs when "funds are not kept in trust and are used for a purpose other than one specified by the client," or when a lawyer "perform[s] no work on [client] matters and never return[s] the funds to the client[ ]." In re Taplin , 837 N.W.2d 306, 311 (Minn. 2013) (citations omitted) (internal quotation marks omitted). Here, Hulstrand failed to keep his clients' funds in trust and used their funds for purposes other than the purpose specified by his clients.
Hulstrand also engaged in other types of serious financial misconduct. He failed to safeguard client funds in seven client matters. See In re Schulte , 869 N.W.2d 674, 677 (Minn. 2015) ("The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety." (citation omitted) (internal quotation marks omitted) ). And he failed to refund unearned legal fees in three client matters. In re Voss , 830 N.W.2d 867, 877 (Minn. 2013) (stating that failing to refund unearned legal fees is serious misconduct warranting "severe discipline"); see also Taplin , 837 N.W.2d at 312 (concluding that the failure "to return $5,225 in advance fees after ... perform[ing] little work for two clients" was serious misconduct).
Moreover, beyond financial misconduct, Hulstrand committed other serious misconduct. He failed to perform work on seven client matters and failed to communicate with clients about their cases in eight matters. See In re Brooks , 696 N.W.2d 84, 88 (Minn. 2005) ("A continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself when no evidence of mitigating circumstances is present."). He made a *443 false statement to a tribunal. See In re Nwaneri , 896 N.W.2d 518, 525-26 (Minn. 2017) (noting that making false statements to a tribunal is "significant misconduct" because it undermined the foundation of "our system for the administration of justice"). He failed to comply with court orders and rules in three client matters. See In re Grzybek , 567 N.W.2d 259, 264-65 (Minn. 1997) (stating that "repeated failure to comply with court orders" is a "serious violation" that itself is a ground for disbarment). And he failed to cooperate with the Director's investigation of several complaints of his alleged misconduct. See In re Rhodes , 740 N.W.2d 574, 579 (Minn. 2007) (concluding that failure to cooperate with the Director's investigation was "serious misconduct" that is "separate grounds for discipline"); see also In re Capistrant , 905 N.W.2d 617, 621 (Minn. 2018).
B.
Additionally, we consider the cumulative weight of Hulstrand's disciplinary violations. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." Nelson , 733 N.W.2d at 464 (citation omitted) (internal quotation marks omitted). We distinguish between "a brief lapse in judgment or a single, isolated incident and multiple instances of mis[conduct] occurring over a substantial amount of time." Taplin , 837 N.W.2d at 312 (alteration in original) (citation omitted) (internal quotation marks omitted).
Here, Hulstrand's misconduct was not an isolated, single incident. Rather, he violated 18 different ethics rules in 13 separate client matters over the span of 4 years. He therefore committed "multiple instances of misconduct" that occurred over a "substantial amount of time." Nwaneri , 896 N.W.2d at 525 (citation omitted) (internal quotation marks omitted).
C.
We also consider the harm that Hulstrand caused to the public and to the legal profession. In evaluating such harm, we consider "the number of clients harmed [and] the extent of the clients' injuries." In re Coleman , 793 N.W.2d 296, 308 (Minn. 2011) (citation omitted) (internal quotation marks omitted). Here, Hulstrand's misconduct harmed 13 clients. He misappropriated the funds of two clients. He failed to return unearned fees to clients in three client matters. Three other clients paid Hulstrand for legal services that they never received. Hulstrand's neglect of five client matters forced these clients to spend additional money to hire other attorneys to complete the job for which they had paid Hulstrand. His lack of communication and failure to complete his legal services caused six clients to experience delay, anxiety, distress, and loss of faith in the legal system. Hulstrand's misconduct caused one client, a vulnerable adult, to be subject to a default judgment of over $44,000. His misconduct also caused another client to have a warrant issued for his arrest, leading to his client being jailed.
Hulstrand's misconduct also caused substantial harm to the legal profession. Misappropriation of client funds harms the legal profession because it "is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." Fairbairn , 802 N.W.2d at 743 (citation omitted) (internal quotation marks omitted). Neglect of client matters and failure to communicate with clients also undermines public confidence in the legal profession. In re O'Brien , 894 N.W.2d 162, 167 (Minn. 2017). Furthermore, failure to cooperate with a disciplinary investigation "undermin[es] the integrity *444 of the attorney disciplinary system and weakens the public's perception of the legal profession's ability to self-regulate." Id. (citation omitted) (internal quotation marks omitted). Accordingly, Hulstrand's misconduct caused substantial harm to many clients, the public, and the legal profession.
D.
We next consider aggravating and mitigating factors to determine the appropriate discipline. See In re Haugen , 543 N.W.2d 372, 375 (Minn. 1996). The referee found several aggravating factors and no mitigating factors.
Hulstrand's prior disciplinary history is an aggravating factor. Tigue , 900 N.W.2d at 432. " '[A]fter being disciplined, an attorney is expected to show a "renewed commitment" to ethical behavior.' " Id. (quoting Coleman , 793 N.W.2d at 308 ). Prior disciplinary history "weighs heavily" if the prior discipline was for similar misconduct. Id.
Hulstrand previously received three private admonitions and was publicly reprimanded for similar misconduct-violations of rules related to diligence, competence, communication with clients, management of trust accounts, withdrawal from representation, and failure to appear for hearings. See Hulstrand , 757 N.W.2d at 690. The referee specifically found that Hulstrand's failure to deposit his clients' unearned fees into a trust account was aggravated by his (1) knowledge that he was required to use a trust account and (2) failure to maintain a trust account despite having twice been disciplined for failing to deposit client funds into his trust account. Hulstrand's prior disciplinary history therefore weighs heavily as an aggravating factor.
Hulstrand's "absence of remorse" is also an aggravating factor. See In re Kaszynski , 620 N.W.2d 708, 714 (Minn. 2001). He failed to recognize or acknowledge the wrongful nature of his misconduct or the impact that it had on the lives of his clients. Although Hulstrand stated that he was "sorry" for his behavior regarding two clients, the referee found that Hulstrand "offered no evidence that he tried to make amends to those clients or to any other clients who were victims of his unprofessional conduct."
In addition, Hulstrand's failure to cooperate in the public disciplinary proceedings before the referee is an aggravating factor. See Taplin , 837 N.W.2d at 313. Although we cannot "double count" the same acts of noncooperation as both substantive misconduct and an aggravating factor, we may consider a lawyer's failure to cooperate in the disciplinary proceedings before the referee as an aggravating factor. See id. ("[A] lawyer's failure to cooperate after a petition is filed may be considered an aggravating factor for the misconduct in the petition."). No double counting occurred here. The referee considered Hulstrand's noncooperation before the Director filed a petition to be substantive misconduct; the referee found that Hulstrand's noncooperation after the initiation of the public disciplinary proceeding was an aggravating factor.
We also consider mitigating factors to determine the appropriate discipline. Haugen , 543 N.W.2d at 375. The attorney subject to discipline, however, must allege and prove any mitigating circumstances. In re Lundeen , 811 N.W.2d 602, 608 n.3 (Minn. 2012). Here, the referee found no mitigating factors, noting that although Hulstrand "suggested during the course of the trial that his unprofessional conduct was the result of [a medical condition] that affected him.... [h]e offered no professional support for his [claim] despite *445 having at least 8 months to obtain testimonial support for the position." The referee concluded that Hulstrand offered "no credible evidence" to mitigate his misconduct. Hulstrand did not brief or argue to us any mitigating factors. Accordingly, no factors mitigate Hulstrand's misconduct.
E.
Finally, we consider the discipline that we have imposed in similar cases. Tigue , 900 N.W.2d at 431. Although we look to similar cases, we impose discipline on a case-by-case basis. In re Walsh , 872 N.W.2d 741, 749 (Minn. 2015).
Misappropriation of client funds alone is sufficient for us to disbar an attorney. Capistrant , 905 N.W.2d at 620. We consider misappropriation of client funds a particularly serious violation and generally disbar attorneys who misappropriate funds unless substantial mitigating circumstances are present. In re Wentzel , 711 N.W.2d 516, 520-21 (Minn. 2006). Even when an attorney misappropriated a small amount of money, we have found disbarment appropriate. See In re Rodriguez , 783 N.W.2d 170, 170 (Minn. 2010) (order) (disbarring an attorney who misappropriated $650); Grzybek , 567 N.W.2d at 265 (disbarring an attorney who misappropriated $750).
This case is similar to cases in which we have disbarred the attorney. See Capistrant , 905 N.W.2d at 622 (disbarring attorney who misappropriated $547 from a client, repeatedly neglected that client's matter, and failed to cooperate with the disciplinary process when the attorney had been disciplined for similar misconduct and no mitigating factors were present); In re Matson , 889 N.W.2d 17, 23 (Minn. 2017) (disbarring attorney for misconduct involving 10 client matters that included misappropriation of $550 of client funds and "affirmative misrepresentations, failing to return unearned fees, failing to follow court rules, and filing a frivolous motion" and when no mitigating factors were present); Grzybek , 567 N.W.2d at 262 (disbarring an attorney for repeated neglect of client matters and failure to follow the disciplinary process after the attorney had been disciplined for similar misconduct, the misappropriation of $750 in client funds, and the repeated failure to comply with court orders). Each of these cases, like this case, involved the misappropriation of client funds, many instances of various misconduct occurring over a substantial amount of time, and no mitigating factors.
We conclude that Hulstrand committed serious misconduct and the only appropriate sanction is disbarment.
Accordingly, we order that:
1. Respondent George E. Hulstrand, Jr., is disbarred from the practice of law in the State of Minnesota, effective on the date of the filing of this opinion.
2. Respondent shall comply with Rule 26 of the Rules on Lawyers Professional Responsibility (requiring notice to clients, opposing counsel, and tribunals), and shall pay $900 in costs under Rule 24(a) of the Rules on Lawyers Professional Responsibility.
Disbarred.

"All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts...." Minn. R. Prof. Conduct 1.15(a).

These matters include the two clients from whom Hulstrand misappropriated funds.

"Except as provided below, fee payments received by a lawyer before legal services have been rendered are presumed to be unearned and shall be held in a trust account pursuant to Rule 1.15." Minn. R. Prof. Conduct 1.5(b)(1).

"A lawyer shall ... promptly pay or deliver to the client or third person as requested the funds, securities, or other properties in the possession of the lawyer which the client or third person is entitled to receive." Minn. R. Prof. Conduct 1.15(c)(4).

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Minn. R. Prof. Conduct 1.1.

"A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

"A lawyer shall ... keep the client reasonably informed about the status of the matter." Minn. R. Prof. Conduct 1.4(a)(3). "A lawyer shall ... promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1.4(a)(4).

"A lawyer shall not knowingly: ... make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer...." Minn. R. Prof. Conduct 3.3(a)(1).

"In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Minn. R. Prof. Conduct 4.1.

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law...." Minn. R. Prof. Conduct 3.1.

"A lawyer shall not: ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists...." Minn. R. Prof. Conduct 3.4(c). "A lawyer shall not: ... in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party...." Minn. R. Prof. Conduct 3.4(d).