**In re Petition for DISCIPLINARY ACTION AGAINST Lynn M. TAPLIN, a Minnesota Attorney, Registration No. 173708.**

No. A12–2002.

Supreme Court of Minnesota.

Sept. 25, 2013.

Martin A. Cole, Director, Robin J. Crabb, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Lynn M. Taplin, Saint Paul, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Lynn M. Taplin. The petition alleged that Taplin committed professional misconduct including client neglect and financial misconduct in two client matters, and that Taplin failed to cooperate in disciplinary investigations. Taplin did not respond to the petition, and we deemed the allegations admitted. In his brief, the Director urged the court to disbar Taplin, but at oral argument suggested a five-year suspension. Although Taplin's misconduct is very serious, we do not agree that she should be disbarred. Instead, in light of Taplin's misconduct and the aggravating factors present in this case, we indefinitely suspend Taplin with no right to petition for reinstatement for two years.

Taplin was admitted to practice law in Minnesota in 1986. Before the present disciplinary action, Taplin was privately admonished in June 2010 and February 2011, both times for failing to diligently handle client matters in family law proceedings. The present disciplinary action involves the following acts of professional misconduct.

*J.R. Matter*

In early June 2011, J.R. retained Taplin to represent him in his marriage

dissolution. J.R. executed a written retainer agreement and paid a $3,000 advance fee retainer to Taplin. In early July, Taplin mailed J.R. a bill stating that Taplin had performed 0.7 hours of work, earning $175 of the $3,000 retainer. Between June and August, J.R. attempted repeatedly to reach Taplin by e-mail and telephone, but besides leaving one voicemail message, Taplin failed to respond.

In September 2011, the district court notified Taplin that it intended to place J.R.'s case on inactive status, and in November the court did so. In February 2012, the court dismissed J.R.'s case. Taplin did not inform J.R. that the court intended to place the case on inactive status, that the case had been placed on inactive status, or that the case had been dismissed. Taplin did not return the $2,825 unearned portion of her retainer to J.R.

Taplin's failure to diligently represent J.R. violated Minn. R. Prof. Conduct 1.3.[1] Taplin's failure to respond to J.R.'s reasonable requests for information violated Minn. R. Prof. Conduct 1.4(a)(4).[2] And Taplin's failure to return the unearned portion of her advance fee violated Minn. R. Prof. Conduct 1.15(c)(4)[3] and 1.16(d).[4]

1. Rule 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

2. Rule 1.4(a)(4) requires a lawyer to "promptly comply with reasonable requests for information" from a client.

3. Rule 1.15(c)(4) requires a lawyer to "promptly pay or deliver to the client or third person as requested the funds, securities, or other properties in the possession of the lawyer which the client or third person is entitled to receive."

4. Rule 1.16(d) requires that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for

### A.T. Matter

■ In late August 2011, A.T. retained Taplin to represent her in her marriage dissolution. By late September, A.T. had paid Taplin a total of $2,400. Taplin drafted a summons and a petition for dissolution and filed the petition with the court. Taplin was notified of the case management conference, but she failed to appear. The court then notified Taplin of a review hearing and ordered her to appear. Taplin, however, failed to appear at the hearing. On November 30, 2011, the court placed A.T.'s dissolution matter on inactive status. Taplin did not inform A.T. about the case management conference, the review hearing, or the fact that her case had been placed on inactive status.

A.T. attempted to reach Taplin on several dates. Taplin did not return any of A.T.'s telephone calls or otherwise inform her of the status of her case. Subsequently, A.T. hired another attorney to represent her in her marriage dissolution.

Taplin's failure to attend the case management conference and the review hearing violated Minn. R. Prof. Conduct 1.1,[5] 1.3, 3.2,[6] 3.4(c),[7] and 8.4(d).[8] Taplin's fail-

employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred."

5. Rule 1.1 states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

6. Rule 3.2 requires a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client."

7. Rule 3.4(c) prohibits a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal

ure to keep A.T. reasonably informed on her case status and Taplin's failure to respond to A.T.'s reasonable requests for information violated Minn. R. Prof. Conduct 1.4(a)(3)[9] and (4). Taplin's failure to return the unearned portion of A.T.'s retainer violated Minn. R. Prof. Conduct 1.15(c)(4) and 1.16(d).

*Failure to Cooperate*

■ The Director sent Taplin a notice of investigation regarding J.R.'s complaint in September 2011, and he sent Taplin a notice of investigation regarding A.T.'s complaint in January 2012. From September 2011 through April 2012, the Director or other investigators attempted to contact Taplin through telephone calls, letters, e-mails, and in-person service. Besides once speaking with the Director and once responding to a letter, Taplin failed to respond to over 20 telephone calls, letters, or in-person contact attempts made in the course of these disciplinary investigations. In addition, the one written response Taplin made was incomplete. Taplin's failure to cooperate with the Director's investigations violated Minn. R. Prof. Conduct 8.1(b)[10] and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[11]

At oral argument, the Director informed the court that Taplin had recently contacted his office and provided documentation that she held A.T.'s and J.R.'s funds in a trust account; had not misappropriated those funds; and had made significant, albeit partial, restitution. But, the Director urged the court not to consider the

new information because Taplin had neglected to participate in any stage of the investigations. The Director asked the court to disbar Taplin or, in the alternative, impose a lengthy suspension. Although she had not filed a brief with the court, Taplin appeared at oral argument. She offered an explanation for her failure to respond, expressed remorse, promised to make full restitution, and asserted that an indefinite suspension with no right to petition for reinstatement for a minimum of two years was a more appropriate discipline.

I.

■ Lawyers are required to file a timely answer to a petition for disciplinary action. Rule 13(a), RLPR. Because Taplin failed to do so, we deemed the allegations in the disciplinary petition admitted. *See id.*, Rule 13(b) ("If the respondent fails to file an answer within the time provided ... the allegations shall be deemed admitted ..."). Although Taplin appeared at oral argument, she did not dispute the substance of the allegations against her. Consistent with Rule 13(b), we will consider the allegations in the petition admitted against Taplin. *See In re Rymanowski*, 809 N.W.2d 217, 221 (Minn.2012).

■ Despite the fact that the allegations are deemed admitted, we must consider the threshold question of whether Taplin's financial misconduct constitutes misappropriation of client funds or a lesser, albeit serious, form of financial misconduct. The

---

based on an assertion that no valid obligation exists."

**8.** Rule 8.4(d) states it is misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

**9.** Rule 1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter."

**10.** Rule 8.1(b) forbids a lawyer from "knowingly fail[ing] to respond to a lawful demand for information from a[ ] ... disciplinary authority."

**11.** Rule 25 requires lawyers "who [are] the subject of an investigation or proceeding under these Rules to cooperate" with the Director "by complying with reasonable requests" for documents and information.

Director did not allege misappropriation in the petition. Instead, the Director alleged that Taplin failed to return unearned advance fees, a lesser form of financial misconduct. In his memorandum of law, the Director argued that Taplin's financial misconduct should either be classified as misappropriation or treated as severely as misappropriation.

▰ In order to comport with due process, lawyers facing discipline must be given notice of the charges against them. *In re Gherity*, 673 N.W.2d 474, 478 (Minn. 2004). We have stated that " '[t]he charges to which an attorney must answer need to be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense.' " *In re Garcia*, 792 N.W.2d 434, 441 (Minn.2010) (quoting *In re Gherity*, 673 N.W.2d at 478); *accord In re Swokowski*, 796 N.W.2d 317, 324 (Minn. 2011). At the same time, we may disbar an attorney even if a petition for disciplinary action does not expressly state that the Director is seeking disbarment. *In re Gherity*, 673 N.W.2d at 479 ("[E]ven if the Director's petition in disciplinary proceedings does not specifically state that disbarment is the discipline the Director is seeking, the attorney's due process rights are not violated when the Director's petition states that 'appropriate discipline' is requested...."); *see also In re Karlsen*, 778 N.W.2d 307, 313 (Minn.2010) ("[W]e have the authority to disbar [a lawyer] for the misconduct alleged in the petition, regardless of the discipline the Director seeks.").

Turning to whether misappropriation occurred, we recently applied two complementary definitions of misappropriation in *In re Voss*, 830 N.W.2d 867, 874 (Minn. 2013). We stated that "misappropriation of client funds occurs when 'funds are not kept in trust and are used for a purpose other than one specified by the client.' " *Id.*

(quoting *In re Fairbairn*, 802 N.W.2d 734, 742 (Minn.2011)). We further stated that "misappropriation may occur when a lawyer 'perform[s] no work on [client] matters and never return[s] the funds to the clients.' " *Id.* (alterations in original) (quoting *In re Lundeen*, 811 N.W.2d 602, 608 (Minn.2012)).

In this case, however, it is undisputed that Taplin performed at least *some* work on both client matters at issue. Taplin performed 0.7 hours of work on the J.R. matter and did an undetermined amount of work leading to the filing of a petition for marriage dissolution in the A.T. matter. Further, Taplin provided the Director, albeit very late in the disciplinary proceeding, with documentation showing that the unearned and unreturned portions of both J.R.'s and A.T.'s fees were held in a trust account. Based on our previous definitions of misappropriation, we conclude that Taplin did not misappropriate client funds.

## II.

▰ We next turn to the appropriate discipline for Taplin's misconduct. "The purpose of attorney discipline is not to punish the attorney but rather to protect the courts, the public, and the legal profession." *In re Nelson*, 733 N.W.2d 458, 465 (Minn.2007). We have identified four factors to assess the appropriate discipline for a lawyer's misconduct: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Ulanowski*, 800 N.W.2d 785, 799 (Minn.2011) (quoting *In re Nelson*, 733 N.W.2d at 463); *see also In re Franke*, 345 N.W.2d 224, 228 (Minn.1984). We also consider mitigating and aggravating circumstances. *In re Ulanowski*, 800 N.W.2d at 799.

### A.

We first consider the nature of the misconduct. Taplin neglected two client matters by performing little work on each of the matters and failing to attend court hearings. Taplin's neglect caused one matter to be placed on inactive status and the other to be dismissed. Taplin also failed to communicate with these clients about the status of their cases. This type of misconduct warrants severe discipline. *See In re Fru,* 829 N.W.2d 379, 388 (Minn. 2013) ("We have said that '[a] continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself....'") (quoting *In re Rhodes,* 740 N.W.2d 574, 578 (Minn.2007)); *In re Grzybek,* 567 N.W.2d 259, 263 (Minn. 1997) ("Repeated neglect of client matters, misrepresentations, and failure to communicate with clients typically warrant indefinite suspension.").

Moreover, Taplin failed to return $5,225 in advance fees after she performed little work for two clients. Failure to return the unearned portion of her fees is also serious misconduct. *In re Voss,* 830 N.W.2d at 877 (stating that attorney's failure to refund unearned fees warranted "severe discipline"); *In re Grathwol,* 574 N.W.2d 70, 70 (Minn.1998) (order) (imposing 12–month suspension when attorney failed to communicate with a client or return unearned fees and did not cooperate with the Director, among other things). While the funds were not misappropriated—the most serious form of financial misconduct—the misconduct was serious because, from the clients' perspectives, they were deprived of the use of their funds without any explanation until shortly before oral argument, when Taplin began making restitution.

Finally, Taplin failed to cooperate with the Director's investigation of two disciplinary complaints filed against her. We have articulated that "failure to cooperate with a disciplinary investigation, in and of itself, constitutes an act of misconduct that warrants indefinite suspension." *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005).

### B.

We have held that "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn.2004); *accord In re Nelson,* 733 N.W.2d at 464. We "distinguish between a 'brief lapse in judgment' or 'a single, isolated incident' and 'multiple instances of mis[conduct] occurring over a substantial amount of time,' because the latter warrants more severe discipline." *In re Murrin,* 821 N.W.2d 195, 208 (Minn. 2012) (alterations in original) (quoting *In re Fairbairn,* 802 N.W.2d at 743). Taplin's repeated neglect of two client matters and financial misconduct, coupled with her failure to cooperate with the Director, was not an isolated incident but instead involved multiple instances of misconduct occurring over many months.

### C.

We also consider the harm to the public and the legal profession when determining appropriate discipline. *In re Nelson,* 733 N.W.2d at 465. In this case, Taplin's misconduct resulted in one of her client's matters being dismissed and another client's matter being placed on inactive status. As a result of Taplin's neglect, one of her clients was forced to retain new counsel. Taplin also deprived her clients of the unearned portion of their advance fee retainers for a lengthy period. And Taplin failed to cooperate with the disciplinary investigations leading up to the filing of the petition. Thus, Taplin's misconduct not only harmed her clients "but

also harmed the legal profession by undermining the public's trust in the competence, diligence, and integrity of lawyers." *In re Fru,* 829 N.W.2d at 390 (concluding that attorney's pattern of client incompetence and neglect and failure to cooperate with the Director harmed those clients and the legal profession).

### D.

■ We next consider aggravating and mitigating factors. Generally, we "impose more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *In re Brooks,* 696 N.W.2d at 88; accord *In re Ulanowski,* 800 N.W.2d at 803. Here, Taplin has twice been disciplined for similar misconduct. We have held that even one previous instance of similar misconduct is an aggravating factor. *In re Nathanson,* 812 N.W.2d 70, 80 (Minn.2012) ("[T]he record shows that Nathanson received two admonitions prior to the initiation of these disciplinary proceedings, one of which involved client neglect in violation of rules he has also violated here.").

■ The failure to cooperate may be considered an aggravating factor. *In re Wolff,* 810 N.W.2d 312, 318 (Minn.2012). But we have also cautioned the Director not to "double count" the same acts of noncooperation as both additional misconduct and an aggravating factor. *See In re O'Brien,* 809 N.W.2d 463, 466 n. 9 (Minn. 2012) (concluding that the same acts of noncooperation cannot count both as additional misconduct and as an aggravating factor). A lawyer's failure to cooperate during the Director's investigation before the filing of the petition should be treated separately from noncooperation that occurs after the petition for discipline is filed. *See In re Voss,* 830 N.W.2d at 878 n. 19. Thus, a lawyer's failure to cooperate

after a petition is filed may be considered an aggravating factor for the misconduct in the petition. *See id.; In re Ulanowski,* 800 N.W.2d at 792. Taplin provided only minimal cooperation after the filing of the disciplinary petition. Thus, Taplin's failure to cooperate after the disciplinary petition was filed is an aggravating factor.

### E.

We also consider prior cases with similar misconduct for guidance. *In re Selmer,* 749 N.W.2d 30, 36 (Minn.2008). Our review indicates that there are two cases with similar misconduct. *See In re Rhodes,* 740 N.W.2d 574, 576 (Minn.2007); *In re Brooks,* 696 N.W.2d at 84. In *Rhodes,* we disbarred a lawyer who engaged in repeated instances of client neglect. The lawyer had been retained by clients in at least seven different matters, and thereafter failed to complete any or almost any work on behalf of the clients, failed to communicate with the clients, failed to respond to the clients' reasonable requests for information, and failed to return unearned fees. *Id.* at 577–78. The lawyer also failed to cooperate in the disciplinary investigation. *Id.* at 579–80. The client neglect and financial misconduct in that case are similar to Taplin's client neglect and misconduct in the present case. However, *Rhodes* is distinguishable from the present case in at least two ways. First, Rhodes was on disciplinary probation when he committed these acts of misconduct. *Id.* at 579. While Taplin has been previously disciplined for similar misconduct, she was not on probation when she committed the current misconduct. Second, Rhodes engaged in misconduct in at least seven different client matters, *id.,* whereas Taplin's misconduct involves two client matters.

In *Brooks,* we indefinitely suspended a lawyer for a minimum of two years in

response to a pattern of client neglect, financial misconduct, and failure to cooperate with the disciplinary investigation. Brooks failed to diligently represent two clients, failed to communicate with those clients, and also overdrew her trust account. *In re Brooks,* 696 N.W.2d at 86. Brooks's misconduct was similar to previous misconduct for which she had been disciplined. *Id.* at 88. Brooks also failed to cooperate with the Director's investigation or the disciplinary action. *Id.* All of those factors are similar to Taplin's misconduct in the present case. *Brooks* is distinguishable from the present case because the amount of money involved in the financial misconduct was significantly smaller, amounting to an apparent conversion of only $200. *Id.* at 86. In addition, the court was concerned that mitigating factors were present in the case, although the record was not completely clear on that issue. *Id.* at 88 (noting that death of a family member can be a mitigating factor but that it was "difficult to consider mitigating factors in this case because Brooks has failed to provide sufficient information about the circumstances").

■ Taplin seriously neglected two client matters, and that neglect resulted in one client's case being dismissed and the other being placed on inactive status. Taplin also engaged in financial misconduct involving client funds in excess of $5,000 and failed to cooperate in the disciplinary investigation. This misconduct is aggravated by the similarity of Taplin's misconduct to her previous misconduct, as well as the fact that she only minimally participated after the disciplinary petition was filed against her. Based on the circumstances described above, the nature of Taplin's misconduct, the aggravating circumstances, and our precedent, we conclude that the appropriate discipline for Taplin's misconduct is an indefinite suspension with no right to petition for reinstatement for a minimum of two years.

Accordingly, we order that:

1. Respondent Lynn M. Taplin is indefinitely suspended from the practice of law in the State of Minnesota, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for a minimum of two years.

2. Taplin shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals); and

3. Taplin shall pay $900 in costs pursuant to Rule 24, RLPR.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.