PER CURIAM.
The Director of the Office of Lawyers Professional Responsibility filed a petition and supplementary petition for disciplinary action against respondent Amoun Vang Sayaovong, alleging six counts of misconduct that occurred in Wisconsin and Minnesota. Sayaovong did not file an answer to either petition. We accordingly deemed the allegations admitted and allowed the parties to file memoranda on the appropriate discipline. Sayaovong has not filed a memorandum or otherwise appeared in this matter. The Director asserts that the appropriate sanction is disbarment. We agree.
FACTS
Sayaovong was admitted to the practice of law in Minnesota in 2008. In 2015, the Director filed a petition for disciplinary action against Sayaovong, alleging three counts of misconduct regarding: (1) misconduct underlying a 2014 Wisconsin disciplinary proceeding involving the Y.Y. and L.V. matters; (2) the C.D. matter in Minnesota; and (3) noncooperation with the Director's investigation of the 2014 Wisconsin disciplinary matters and the C.D. matter. After the Director was unable to personally serve Sayaovong, we granted the Director's application for an order for suspension under Rule 12(c)(1), Rules on Lawyers Professional Responsibility (RLPR), and gave Sayaovong 1 year to file a motion to vacate the suspension and seek leave to answer the petition. In re Sayaovong , No. A15-1320, Order at 1 (Minn. filed Oct. 23, 2015). Sayaovong did not file such a motion or respond to the petition. He has not petitioned for reinstatement and has remained suspended since October 2015.
In 2017, the Director filed a supplementary petition for disciplinary action against Sayaovong, alleging three additional counts of misconduct regarding: (1) misconduct underlying a 2015 Wisconsin disciplinary proceeding involving the P.S. and C.S. matter, as well as the D&D Auto Services, LLC matter; (2) the L.J. and M.J. matter in Minnesota; and (3) noncooperation with the Director's investigation of the 2015 Wisconsin disciplinary matters and the L.J. and M.J. matter. Sayaovong did not file an answer to the supplementary petition.
Because Sayaovong failed to respond to either petition, we deemed the allegations in the petition and supplementary petition admitted. See In re Sayaovong , A15-1320, Order at 1-2 (Minn. filed June 16, 2017); In re Sayaovong , A15-1320, Order at 1 (Minn. filed Nov. 15, 2016); see also Rules *578 12(c), 13(b), RLPR. The admitted facts are as follows.
Sayaovong's misconduct that occurred in Wisconsin involves four client matters: Y.Y., L.V., P.S. and C.S., and D&D Auto Services, LLC.
Y.Y. Matter
Sayaovong represented Y.Y. in a social security administration appeal in 2009. In re Sayaovong , 357 Wis.2d 312, 850 N.W.2d 940, 942 (2014). Y.Y. paid Sayaovong a $2,000 retainer fee. Id. Sayaovong submitted the appeal, but then abandoned Y.Y.'s matter and took no further action. Id. Sayaovong never sent a copy of the appeal to Y.Y. Id.
The client filed a grievance against Sayaovong with the Office of Lawyer Regulation (OLR) in Wisconsin. Id. Other than providing a new address, Sayaovong failed to respond to any of the OLR's communications regarding the Y.Y. matter. Id. at 943. Sayaovong also did not respond to the Wisconsin Supreme Court's order to show cause, and was consequently suspended for 3 months until he satisfactorily responded to the OLR. Id.
L.V. Matter[1]
L.V. hired Sayaovong to represent him in his immigration removal proceedings in 2010. Id. at 944. Sayaovong received a $4,000 retainer but never placed it into a trust account. Id. Two months later, L.V. terminated Sayaovong and requested an accounting of his fees and a refund of $2,000. Id. Sayaovong told L.V. that the retainer was a nonrefundable flat fee, even though there was no written fee agreement, and Sayaovong never provided L.V. with an accounting. Id.
L.V. also filed a grievance against Sayaovong with the OLR. Id. Sayaovong did not cooperate with the OLR's investigation of the L.V. matter until the Wisconsin Supreme Court ordered him to show cause as to why his license should not be suspended. Id.
The OLR filed a complaint in the Wisconsin Supreme Court regarding the Y.Y. and L.V. matters. Id. at 942. The court held that Sayaovong was in default, the allegations in the complaint were established, and Sayaovong had committed seven counts of misconduct. Id. at 946. Sayaovong was publicly reprimanded and ordered to make restitution of $2,000 to Y.Y. and $2,000 to L.V. Id. Sayaovong has not made restitution to either client.
P.S. and C.S. Matter
Sayaovong represented P.S. and C.S. in an accident case in 2009. In re Sayaovong , 365 Wis.2d 200, 871 N.W.2d 271, 272 (2015). The clients received a favorable judgment of $6,500, and the defendant's employer sent garnished funds to Sayaovong to be paid to P.S. and C.S. Id. Sayaovong did not notify the clients upon receipt of the funds but issued checks to them periodically. Id. at 272-73. On one occasion, Sayaovong received a garnishment check, did not deposit it into a trust account, and never sent a corresponding check to P.S. and C.S., despite the clients questioning him about the missing payment. Id. at 273. Sayaovong thereafter stopped sending regular payments to the clients, and eventually, Sayaovong stopped sending the payments altogether. Id.
Sayaovong was frequently unresponsive to P.S. and C.S. Id. After the defendant became unemployed, he told Sayaovong that he would make payments to Sayaovong *579 directly. Id. Sayaovong did not inform P.S. and C.S. of this information for over a month. Id. The clients later requested an accounting of the funds from Sayaovong, but he never provided one. Id.
P.S. and C.S. eventually filed a grievance against Sayaovong with the OLR. Id. Sayaovong again did not cooperate with the OLR's investigation. Id.
D&D Auto Services, LLC Matter
Sayaovong represented D&D Auto Services, LLC ("D&D") in a small claims action in 2013. Id. at 274. While his Wisconsin law license was suspended, Sayaovong sent opposing counsel a draft stipulation to settle the D&D matter. Id.[2]
After realizing that Sayaovong's law license was suspended, opposing counsel filed a grievance with the OLR. Id. Sayaovong did not respond to the OLR's investigation of this matter. Id.
The OLR filed a complaint in the Wisconsin Supreme Court regarding the P.S. and C.S. matter and the D&D matter. Id. at 272. The court held that Sayaovong was in default and that the allegations in the complaint were established. Id. at 275-76. Consequently, the court suspended him from the practice of law in Wisconsin for 6 months. Id. at 276.
In Minnesota, Sayaovong committed additional acts of misconduct involving two client matters: C.D., and L.J. and M.J.
C.D. Matter
C.D. hired Sayaovong in 2012 after she fell behind on her mortgage payments. After paying Sayaovong a $3,000 retainer fee, Sayaovong abandoned her legal matter. C.D.'s home was thereafter foreclosed upon, and Sayaovong never returned the retainer fee to her. C.D. later obtained a default judgment against Sayaovong in the amount of $6,575 for damages resulting from his abandonment of her legal matter. This judgment remains unsatisfied.
Sayaovong did not cooperate with the Director's investigation of the C.D. matter. The Director sent three notices to Sayaovong over the course of 2 months, each of which requested a response. Sayaovong did not respond to any of the requests.
L.J. and M.J. Matter
L.J. and M.J. retained Sayaovong to challenge foreclosure proceedings on their home.[3] They paid Sayaovong a $3,000 retainer. Sayaovong filed suit on behalf of the clients against two mortgage companies, but thereafter failed to respond to correspondence from opposing counsel. Sayaovong also did not respond to a motion for sanctions and attorney fees, a motion to dismiss, and an amended motion to dismiss. Nor did he inform his clients of any of the motions. Sayaovong later appeared at the hearing on the motions and attempted to file a written response at that time, but his request was denied by the court as untimely. The court thereafter granted the motion to dismiss and denied the motion for sanctions. Although Sayaovong's written response was rejected as untimely, Sayaovong billed the clients for the time spent preparing and submitting the response.
L.J. and M.J. provided Sayaovong with an additional $3,000 to represent them on appeal. Sayaovong filed the appeal but did not file a required document with it. Even though the court clerk notified him of the error, and the court ordered him to correct the deficiencies, Sayaovong never adequately corrected the filing error.
*580 Sayaovong subsequently failed to appear for oral argument, and the appeal was submitted without oral argument. The court of appeals affirmed in part and remanded in part. On remand, Sayaovong did not file a response to a motion for summary judgment, which was then granted against L.J. and M.J.
Sayaovong did not respond to numerous requests from L.J. and M.J. about their case, including a request for a refund along with requests for their client file. L.J. and M.J. later obtained a default judgment of $6,000 against Sayaovong for the amount of attorney's fees paid. This judgment remains unsatisfied.
Sayaovong did not cooperate with the Director's investigation of the L.J. and M.J. matter. The Director mailed Sayaovong three letters over the course of 4 months, each requesting a response. Sayaovong did not respond to any of the letters.
Based on all six client matters in Wisconsin and Minnesota, the Director requests that Sayaovong be disbarred, arguing that the most serious misconduct is misappropriation of funds in the P.S and C.S. matter when Sayaovong did not remit the garnishment funds to the clients. Sayaovong has not filed any document in this case or otherwise appeared.
ANALYSIS
I.
A threshold question is whether Sayaovong's financial misconduct in the P.S. and C.S. matter constitutes misappropriation of client funds. The Director did not allege misappropriation in the petition or supplementary petition. Instead, the supplementary petition referenced Sayaovong's 2015 Wisconsin disciplinary case, and stated that Sayaovong "fail[ed] to notify the client[s] of his receipt of garnishment funds," and "never remitted [the funds] to the client[s]." The Wisconsin Supreme Court did not conclude that Sayaovong misappropriated funds, but rather held that Sayaovong failed to provide notice that he received the funds and failed to provide an accounting. See Sayaovong , 871 N.W.2d at 273, 275. The Director argued in her memorandum of law, however, that Sayaovong's failure to remit these funds to P.S. and C.S. is misappropriation.
"In order to comport with due process, lawyers facing discipline must be given notice of the charges against them." In re Taplin , 837 N.W.2d 306, 311 (Minn. 2013). The charges must be "sufficiently clear and specific." Id. (citation omitted) (internal quotation marks omitted). But we "may disbar an attorney even if a petition for disciplinary action does not expressly state that the Director is seeking disbarment." Id. We will therefore consider whether Sayaovong's conduct in the P.S. and C.S. matter is misappropriation. See id. , 837 N.W.2d at 310-11 (analyzing whether misconduct was misappropriation where the Director did not allege misappropriation in the petition, but argued that the misconduct was misappropriation in her memorandum).
" 'Misappropriation occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client.' " In re Lundeen , 811 N.W.2d 602, 608 (Minn. 2012) (quoting In re Westby , 639 N.W.2d 358, 370 (Minn. 2002) ). An attorney misappropriates client funds if the attorney receives funds from a third-party on behalf of a client, fails to deposit those funds into a trust account, and does not remit the funds to the client. See id. at 605, 608 (concluding that an attorney misappropriated client funds when he received two settlement checks, did not place the checks into his trust *581 account, and did not pay the client his portion of the settlement funds).
Here, on at least one occasion, Sayaovong misappropriated client funds.[4] Even though the proceeds of the garnishment check that Sayaovong received were meant for P.S. and C.S., Sayaovong did not deposit those funds into his trust account or remit the funds to his clients. Sayaovong , 365 Wis.2d at 204, 871 N.W.2d 271 ("Attorney Sayaovong did not deposit a garnishment check issued ... and did not send a corresponding check to his clients.").
II.
The next issue is the appropriate discipline to impose. This case involves misconduct that occurred in Wisconsin for which the Wisconsin Supreme Court has already disciplined Sayaovong, as well as additional misconduct that occurred in Minnesota.[5] Because the Director did not file a petition for reciprocal discipline under Rule 12(d), RLPR, we will consider all of the misconduct that Sayaovong has committed, rather than apply the reciprocal-discipline standard, to determine the appropriate discipline. See In re Matson , 889 N.W.2d 17, 23 n.2 (Minn. 2017) (declining to apply the reciprocal-discipline standard, even when the Director requested it, because the case involved additional acts of misconduct that were not considered by the other jurisdiction).
"The purpose of attorney discipline is not to punish the attorney but rather to protect the courts, the public, and the legal profession." In re Nelson , 733 N.W.2d 458, 465 (Minn. 2007). In assessing the appropriate sanction in an attorney-discipline matter, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." Id. at 463. We also consider aggravating and mitigating circumstances. In re Albrecht , 779 N.W.2d 530, 540 (Minn. 2010). Finally, we impose discipline on a case-by-case basis, but may look to similar cases for guidance. See In re Schulte , 869 N.W.2d 674, 677 (Minn. 2015).
A.
We first consider the nature of Sayaovong's misconduct, which occurred over at least 4 years and includes various types of misconduct in Minnesota and Wisconsin. First, and most serious, Sayaovong misappropriated client funds in the P.S. and C.S. matter. "Misappropriation of client funds alone is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors."
*582 In re Garcia , 792 N.W.2d 434, 443 (Minn. 2010) (citation omitted) (internal quotation marks omitted).
Second, Sayaovong did not return unearned fees in four client matters and charged an unreasonable fee in one client matter. Failure to return unearned fees is serious misconduct because "from the clients' perspective, they were deprived of the use of their funds without any explanation." Taplin , 837 N.W.2d at 312. Sayaovong did not return any part of the $3,000 retainer to C.D. after abandoning her legal matter. Sayaovong also never returned unearned fees to L.V. and Y.Y., despite the Wisconsin Supreme Court's order that he pay restitution in the amount of $2,000 to L.V. and $2,000 to Y.Y. Additionally, Sayaovong charged L.J. and M.J. an unreasonable fee when he billed them for a brief that was untimely filed and not accepted by the court, as well as for an oral argument that he never attended. All of these clients obtained separate judgments against Sayaovong that remain unsatisfied.
Third, Sayaovong engaged in a pattern of client abandonment and neglect involving five clients. "We have repeatedly warned that a continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself and that more extreme cases involving client neglect and failure to communicate with clients may merit disbarment." In re Rhodes , 740 N.W.2d 574, 578 (Minn. 2007) (citations omitted) (internal quotation marks omitted) (alteration omitted). Here, Sayaovong abandoned C.D.'s matter and Y.Y.'s matter. He also repeatedly failed to communicate with P.S. and C.S., L.J. and M.J., and L.V. In the L.J. and M.J. matter, Sayaovong did not respond to correspondence from opposing counsel, did not timely respond to three dispositive motions, and did not inform the clients of the motions. In the P.S. and C.S. matter, Sayaovong did not timely pursue collections against the defendant, did not communicate with the clients regarding the funds, and never provided an accounting. Sayaovong also ignored L.V.'s request to provide him with an accounting.
Fourth, Sayaovong disregarded court obligations by failing to appear for an oral argument and disregarding filing requirements in the L.J. and M.J. matter. Failure to appear, when accompanied by other misconduct, may warrant severe discipline. See In re Pokorny , 453 N.W.2d 345, 347 (Minn. 1990).
Fifth, Sayaovong engaged in the unauthorized practice of law in the D&D matter when he sent opposing counsel a settlement offer while his license was administratively suspended. See In re Grigsby , 815 N.W.2d 836, 842 (Minn. 2012) (stating that when an unlicensed person "acts in a representative capacity in protecting, enforcing, or defending the legal rights of another," that person engages in the unauthorized practice of law (citation omitted) (internal quotation marks omitted) ). Practicing law without a license is serious misconduct. Id. at 845.
Finally, Sayaovong has demonstrated a pattern of noncooperation. "A lawyer's failure to cooperate with an investigation into professional misconduct is serious misconduct that constitutes separate grounds for discipline." Rhodes , 740 N.W.2d at 579. Sayaovong largely failed to cooperate with investigations in four client matters in Wisconsin, and never appeared in either Wisconsin disciplinary proceeding. In the Director's investigation of both the Minnesota and Wisconsin matters, Sayaovong did not respond to any correspondence, never filed an answer to either petition, and did not file a brief or otherwise appear. See In re Walker , 461 N.W.2d 219, 223 (Minn. 1990) (stating that *583 an attorney engaged in a pattern of noncooperation when he did not respond to correspondence from the Director, did not answer the petitions, and did not file a brief with this court).
B.
Having determined that Sayaovong's misconduct was serious, we now consider the cumulative weight of his violations. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." Nelson , 733 N.W.2d at 464 (alteration in original) (citation omitted) (internal quotation marks omitted). We distinguish a "brief lapse in judgment" or a "single, isolated incident" from "multiple instances of mis[conduct] occurring over a substantial amount of time," the latter of which warrants more severe discipline. Taplin , 837 N.W.2d at 312 (alteration in original) (citation omitted) (internal quotation marks omitted).
Here, Sayaovong's misconduct was neither a single, isolated event nor a brief lapse in judgment. Sayaovong committed numerous acts of misconduct-from misappropriation to client neglect. Moreover, his misconduct occurred over a span of at least 4 years. See In re Hummel , 839 N.W.2d 78, 82 (Minn. 2013) (holding that misconduct occurring over the course of several months was an "extended period of time"). The cumulative weight of his misconduct therefore "merits the imposition of a serious sanction." In re Ulanowski , 800 N.W.2d 785, 801 (Minn. 2011).
C.
We next consider the harm to the public and the legal profession. In evaluating the harm to the public, we take into consideration "the number of clients harmed [and] the extent of the clients' injuries." In re Rambow , 874 N.W.2d 773, 779 (Minn. 2016) (alteration in original) (citation omitted) (internal quotation marks omitted). Sayaovong's misconduct involves eight clients. Seven of these clients were permanently deprived of funds when Sayaovong misappropriated funds, charged an unreasonable fee, and never returned unearned fees. In fact, five of these clients were forced to take legal action against Sayaovong in an attempt to recover unearned fees and damages. Sayaovong's failure to provide restitution to any of these clients harmed the public. See In re Voss , 830 N.W.2d 867, 878 (Minn. 2013).
Sayaovong's misconduct also harmed the legal profession. Misappropriation and the failure to return unearned fees "is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." In re Fairbairn , 802 N.W.2d 734, 743 (Minn. 2011) (citation omitted); see Voss , 830 N.W.2d at 878. Sayaovong's neglect of client matters and lack of communication were not only "intensely frustrating to the client[s], [but also] reflect[ed] adversely on the bar, and [were] destructive of public confidence in the legal system." See In re Nathanson , 812 N.W.2d 70, 79 (Minn. 2012) (citations omitted) (internal quotation marks omitted). Moreover, Sayaovong's noncooperation with disciplinary investigations "weaken[ed] the public's perception of the legal profession's ability to self-regulate." In re Pitera , 827 N.W.2d 207, 212 (Minn. 2013).
D.
Finally, we consider any aggravating and mitigating factors when determining the appropriate discipline. In re Haugen , 543 N.W.2d 372, 375 (Minn. 1996). No aggravating factors appear from the facts of the admitted petitions. See In re Ulanowski , 834 N.W.2d 697, 704 (Minn. 2013)
*584 (stating that the admitted petition contained facts that established aggravating factors). Because Sayaovong did not file an answer to the petition, there are also no mitigating factors. See id. at 703-04 (concluding that there were no mitigating factors to consider because the attorney did not file an answer to the petition).
Misappropriation of client funds is a particularly serious violation and we generally disbar attorneys who intentionally misappropriate funds unless there are "substantial mitigating circumstances." In re Wentzel , 711 N.W.2d 516, 520-21 (Minn. 2006) (citation omitted) (collecting cases). Sayaovong has not alleged any mitigating circumstances, much less substantial ones, to warrant imposing a sanction less than disbarment. And although the amount that Sayaovong misappropriated from P.S. and C.S. is unknown, we have disbarred attorneys who have misappropriated even small amounts of money. See In re Capistrant , 905 N.W.2d 617, 622 (Minn. 2018) (disbarring an attorney who misappropriated $547); In re Rodriguez , 783 N.W.2d 170, 170 (Minn. 2010) (disbarring an attorney who misappropriated $650); In re Grzybek , 567 N.W.2d 259, 265 (Minn. 1997) (disbarring an attorney who misappropriated $750).
Moreover, Sayaovong engaged in many other serious types of misconduct and has also failed to cooperate with the disciplinary process. Disbarment is appropriate.
CONCLUSION
Accordingly, we order that respondent Amoun Vang Sayaovong is disbarred from the practice of law in the State of Minnesota, effective on the date of the filing of this opinion. Sayaovong shall comply with Rule 26, RLPR (notifying clients, opposing counsel, and tribunals of disbarment), and shall pay $900 in costs under Rule 24(a), RLPR.

The Wisconsin Supreme Court refers to "L.V." as "L.Y." See Sayaovong , 850 N.W.2d at 944. The Director's petition and memorandum of law refer to "L.V." We refer to this client as L.V.

Sayaovong's Wisconsin law license was administratively suspended on October 31, 2013, for failure to pay bar membership dues. Sayaovong , 871 N.W.2d at 274.

The record does not reflect when Sayaovong was retained.

Sayaovong may have also misappropriated funds in the C.D. and L.V. matters. See Taplin , 837 N.W.2d at 311 ("Misappropriation may occur when a lawyer perform[s] no work on [client] matters and never return[s] the funds to the clients." (alterations in original) (citation omitted) (internal quotation marks omitted) ). Because the Director did not contend that this conduct was misappropriation in her petition or memorandum, however, we will not consider it here. See id. at 312 (analyzing whether an attorney's conduct was misappropriation where the Director did not allege it in the petition but argued that it was misappropriation in her memorandum of law); In re Gherity , 673 N.W.2d 474, 478 (Minn. 2004) ("The charges to which an attorney must answer need to be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense." (citations omitted) ).

Sayaovong is subject to discipline in this jurisdiction for the same misconduct for which the Wisconsin Supreme Court disciplined him. See Minn. R. Prof. Conduct 8.5(a) ("A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.").