PER CURIAM.
The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action, alleging that respondent Israel Esquivel Villanueva, an attorney licensed in Minnesota as a foreign legal consultant, committed professional misconduct by misappropriating clients' funds, engaging in the unauthorized practice of law, neglecting client matters, failing to communicate with clients, failing to refund unearned fees, failing to adequately supervise nonlawyer assistants, forging a client's signature on a legal document filed with a court, falsely representing that he was authorized to practice law, failing to make required disclosures for a foreign legal consultant, and failing to cooperate with the Director's investigation. Because Villanueva did not respond to the petition, the allegations in the petition were deemed to be admitted. Villanueva has not filed a memorandum or otherwise appeared in this matter. Because of his egregious misconduct, we disbar Villanueva.
FACTS
Villanueva was licensed to practice law in Mexico in 2005. He received a foreign legal consultant license in Minnesota on March 24, 2014. As a foreign legal consultant, although Villanueva was authorized to provide legal services in Minnesota regarding the law of Mexico, he was not authorized to provide legal services regarding the law of the United States, Minnesota, or any other state. See Rule 11(E), Rules for Admission to the Bar ("Admission Rules"). Licensed foreign legal consultants are "expressly subject to ... the Minnesota Rules of Professional Conduct and all laws and rules governing lawyers admitted to the practice of law in this state." Rule 11(F)(1)(a), Admission Rules.
*819 In 2014, Villanueva began working for Zimmer Law Group, LLC, a Minnesota law firm. Villanueva maintained a law office in Mexico City, Mexico, where he employed two nonlawyer assistants who helped with client matters. Zimmer informed the Minnesota Board of Law Examiners that Villanueva's employment with the firm ended as of July 11, 2015. A licensed foreign legal consultant must "[m]aintain an office in [Minnesota] for the purpose of practicing as a foreign legal consultant." Rule 11(B)(7), Admission Rules. Because Villanueva did not provide the Board of Law Examiners with notice of a new place of employment, his license lapsed. After months of communications, the Board of Law Examiners restored Villanueva's foreign legal consultant license on March 16, 2016.[1] His license lapsed again in October 2017.
Villanueva's misconduct involves eight client matters over 5 years.[2] In addition, Villanueva failed to cooperate with the Director's investigation. We summarize the misconduct below.
Misappropriation of clients' funds and failure to return unearned fees
Villanueva misappropriated client funds. Four clients paid him a total of $9,390 in attorney fees. Villanueva performed no work for these clients and did not return any of their attorney fees. See In re Voss , 830 N.W.2d 867, 874 (Minn. 2013) (stating that "misappropriation may occur when a lawyer perform[s] no work on [client] matters and never return[s] the funds to the clients." (alterations in original) (citation omitted) (internal quotation marks omitted)). In four other matters, Villanueva collected a total of $20,200 in advance attorney fees, performed little work for the clients, and then failed to return any unearned fees to the clients after the representation ended. Villanueva's conduct violated Minn. R. Prof. Conduct 1.15(c)(4), 1.16(d), and 8.4(c).[3]
Unauthorized practice of law
Villanueva engaged in the unauthorized practice of law. He was retained by Minnesota residents in the W.K. matter in May 2013, but he was not authorized to act as a foreign legal consultant until March 24, 2014. Villanueva provided legal services to S.G., a Florida resident, even though his foreign legal consultant license authorized him to practice law only in Minnesota. Additionally, in the A.L. matter, Villanueva submitted temporary work visa applications to the federal government and provided *820 legal advice to a Texas trucking company regarding United States Department of Labor procedures, which was beyond the scope of the practice of a foreign legal consultant. Villanueva's conduct violated Minn. R. Prof. Conduct 5.5(a) and Rule 11(E)(1)(e), Admission Rules.[4]
Villanueva also held himself out as authorized to practice law in Minnesota when he was not actually authorized to practice here. Villanueva's foreign legal consultant license lapsed in October 2017. Because Villanueva did not disclose this to Y.V.J. or U.L.R., they continued to believe that he was able to represent them. He also falsely told Y.V.J. that he could finalize a Mexican deed registration after his license had lapsed. Villanueva's conduct violated Minn. R. Prof. Conduct 5.5(b)(2) and 8.4(c).[5]
Improper retainer agreement
In all eight client matters, Villanueva did not have a written retainer agreement that made all the required disclosures for a foreign legal consultant. His retainer agreements did not state in bold type that he "is not admitted to practice law in this state, nor licensed to advise on the laws of the United States or the District of Columbia" and that his practice "is limited to the laws of the foreign country where [he] is admitted to practice," in violation of Rule 11(E)(1)(h) of the Admission Rules. Even though Villanueva held client funds, the retainer agreements did not "specify in bold type the name of a Minnesota lawyer licensed in good standing who is also representing the particular client in the particular matter at hand," in violation of the same rule. And by failing to comply with applicable rules regarding the required disclosures for a foreign legal consultant, Villanueva violated Minn. R. Prof. Conduct 3.4(c).[6]
Neglect of client matters and failure to communicate with clients
In all eight matters, Villanueva failed to advise his clients of the status of their matters, failed to act diligently on the matters, and eventually effectively terminated the representation by stopping work on the matters. For example, although Villanueva was removed as W.K.'s attorney by the Mexico courts, he failed to inform his client of his removal, in addition to failing to communicate with his client for a period of 3 months during the representation. He later ceased communication with W.K. completely and effectively ended his representation. In the J.C.C. matter, Villanueva stopped responding to his client's inquiries within 4 months of signing the retainer agreement and failed to produce any documents showing that he had taken any substantive action regarding J.C.C.'s divorce proceeding or that a hearing that he told J.C.C. was scheduled had actually occurred.
In the S.G. matter, Villanueva prepared the necessary documents in May 2016 but failed to file them until November 2016. Later, after the Mexico court directed Villanueva to make corrections to his filing, he informed the court that "S.G. would be unable to present adequate proof of paternity and requested that S.G.'s paternity matter be closed." Villanueva never informed S.G. of any of this activity. After *821 he stopped working on the matter, he failed to return documents to S.G. In the A.L. matter, Villanueva ceased all communications with A.L. after 4 months, effectively discontinuing his representation; no evidence suggested that Villanueva had performed the legal services promised. In the J.G.M. matter, Villanueva failed to provide any documents and wrote to J.G.M. saying that "this law office has closed your case" after the client requested documents proving what work he had done.
In the E.P.C. matter, Villanueva ceased all communications with the client after failing to produce any evidence that work had been completed. Villanueva also failed to communicate with Y.V.J. regarding the status of her deed registration matter. Y.V.J. complained to the Mexican consulate, who referred him to Villanueva. After a promise to finalize the deed, Villanueva ceased communication with Y.V.J. and effectively ended the representation. Lastly, Villanueva failed to communicate with U.L.R. regarding the status of his case, and after 6 months of representation, Villanueva ceased all communication with U.L.R. and ended the representation. Villanueva's conduct violated Minn. R. Prof. Conduct 1.2(a), 1.3, 1.4(a)(3) and (4), and 1.16(b) and (d).[7]
Failure to adequately supervise non-lawyer assistants
At all times, Villanueva had two nonlawyer assistants working at his law firm in Mexico. Villanueva delegated a significant amount of responsibility to these nonlawyer assistants in five of the client matters, but he failed to adequately supervise them. This conduct violated Minn. R. Prof. Conduct 5.3(b).[8]
Forgery of legal documents
Villanueva filed a forged document with a Mexico court, requesting closure of S.G.'s paternity action. The document used first person pronouns and was purportedly signed by S.G., although S.G. neither signed nor authorized Villanueva to sign and submit this document. This conduct violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c).[9]
Failure to cooperate with the Director's investigation
The Director received eight complaints about Villanueva and sent Villanueva a notice of investigation for each complaint. Villanueva failed to submit timely responses to all notices of complaints against him. He also failed to respond or to timely respond to multiple follow-up communications from the Director. And Villanueva did not provide an updated address to the Board of Law Examiners.
*822 The Director notified Villanueva that he was to meet with the Director on June 13, 2018. Villanueva did not appear for the meeting. The meeting was rescheduled for June 20, 2018, and the Director again requested documents and responses from Villanueva no later than the June 20 meeting. Villanueva failed to provide any documents or responses but appeared for the June 20 meeting.
The Director served charges of unprofessional conduct on Villanueva on October 18, 2018.[10] Villanueva did not answer the charges or otherwise communicate with the Director regarding the charges.
This conduct violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[11]
The Director personally served the petition for disciplinary action on Villanueva. After Villanueva failed to file an answer, we deemed the allegations in the petition admitted. See Rule 13(b), RLPR. We directed the parties to file briefs regarding the appropriate discipline to be imposed. Only the Director filed a brief. Villanueva did not appear at oral argument or otherwise appear in this matter.
ANALYSIS
Because we have deemed the allegations in the petition admitted, the only question before us is what level of discipline is appropriate. In re Lundeen , 811 N.W.2d 602, 608 (Minn. 2012). We have ultimate responsibility as to the imposition of discipline. In re Nathanson , 812 N.W.2d 70, 78-79 (Minn. 2012). "The purpose of discipline for professional misconduct is not to punish the attorney but to protect the public and the judicial system, and to deter future misconduct by the disciplined attorney and other attorneys." Id. at 78. To determine the appropriate discipline warranted, we consider the following four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violation; (3) the harm to the public; and (4) the harm to the legal profession." Id. at 79 (citation omitted) (internal quotation marks omitted). We also consider aggravating and mitigating circumstances and the discipline imposed in similar cases. See In re Tigue , 900 N.W.2d 424, 431 (Minn. 2017). "Sanctions are imposed according to the unique facts of each case, but earlier cases are useful for drawing analogies." In re Lochow , 469 N.W.2d. 91, 96 (Minn. 1991).
Nature of the misconduct
Villanueva's misconduct is extensive and severe in nature. Villanueva misappropriated $9,390 from four clients. "We consider misappropriation of client funds a particularly serious violation and generally disbar attorneys who misappropriate client funds unless there are substantial mitigating circumstances." Lundeen , 811 N.W.2d at 608 (citation omitted) (internal quotation marks omitted).
Villanueva engaged in other misconduct involving client funds. He failed to return unearned fees in four matters. The "[f]ailure to return unearned fees is serious misconduct because from the clients' perspective, they were deprived of the use *823 of their funds without any explanation." In re Sayaovong , 909 N.W.2d 575, 582 (Minn. 2018) (citation omitted) (internal quotation marks omitted).
Villanueva engaged in the practice of law beyond the scope permitted by his foreign legal consultant license in two matters, and in one matter, he engaged in the practice of law before he had received his foreign legal consultant license. In two other matters, he represented that he was authorized to practice law in Minnesota after his foreign legal consultant license had lapsed. "Practicing law without a license is serious misconduct." Id. at 582.
Villanueva engaged in a continuing pattern of client neglect. "We have repeatedly warned that a continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself and that more extreme cases involving client neglect and failure to communicate with clients may merit disbarment." Id. (citation omitted) (internal quotation marks omitted). Here, Villanueva failed to communicate with all eight clients, specifically failed to respond to inquiries by clients on the status of their cases, did little or no work on the matters, and then ended the representation.
Lastly, Villanueva has demonstrated a pattern of noncooperation. Villanueva failed to respond to four notices of investigation; he responded in an untimely manner to four other notices of investigation; he failed to respond or to timely respond to other requests from the Director; and he did not respond to the charges of unprofessional conduct. We have held that failure to cooperate with the Director's investigation constitutes independent grounds for serious discipline. In re De Rycke , 707 N.W.2d 370, 375 (Minn. 2006).
Cumulative weight
"We distinguish between a brief lapse in judgment or a single, isolated incident from multiple instances of mis[conduct] occurring over a substantial amount of time." Voss , 830 N.W.2d at 877-78 (citation omitted) (internal quotation marks omitted). Villanueva's misconduct occurred over a 5-year period in eight client matters. It clearly involved multiple acts over a substantial amount of time. See id. at 878 (holding that two instances of misappropriation of client funds in addition to numerous other types of professional misconduct "weighed in favor of severe discipline"). Among the most serious of the violations here, Villanueva has failed to return or misappropriated almost $30,000 of retainer fees. The "combined magnitude and duration" of Villanueva's misconduct weigh in favor of severe discipline. See id.
Harm to the public and legal profession
We next consider the harm to the public and the legal profession. See Nathanson , 812 N.W.2d at 78-79. "In evaluating the harm to the public, we take into consideration the number of clients harmed [and] the extent of the clients' injuries." Sayaovong , 909 N.W.2d at 583 (alteration in original) (citation omitted) (internal quotation marks omitted). Villanueva's misconduct harmed eight clients. His clients were harmed financially because Villanueva misappropriated their funds or failed to return unearned fees; there is no evidence that Villanueva has repaid any of this money to any client. Moreover, "[a] lawyer's ... neglect, and failure to communicate with a client are intensely frustrating to the client." Nathanson , 812 N.W.2d at 79 (citation omitted) (internal quotation marks omitted). In all eight matters, Villanueva either failed to perform work as promised or allowed his clients' claims to be forfeited.
Concerning harm to the legal profession, Villanueva's misappropriation was a "breach of trust that reflects poorly on the entire legal profession and erodes the public's *824 confidence in lawyers." In re Rooney , 709 N.W.2d 263, 270 (Minn. 2006). His pattern of neglect also "reflect[s] adversely on the bar, and [is] destructive of public confidence in the legal profession, which harms ... the profession, and the justice system." Nathanson , 812 N.W.2d at 79 (citation omitted) (internal quotation marks omitted).
Aggravating and mitigating factors
The Director claims that three aggravating factors are present. The Director argues that "the clients impacted by respondent's misconduct were vulnerable" because several of them do not speak English. Misconduct may be aggravated by the vulnerability of non-English-speaking clients. See In re Kaszynski , 620 N.W.2d 708, 712 (Minn. 2001). Here, Villanueva's status as a licensed attorney in Mexico suggests that he is at least bilingual, but more importantly, the Director presents no evidence that there were language issues with any of his clients. Based on the facts of this case, the Director has not shown the vulnerability of Villanueva's clients.
Next, the Director argues that Villanueva's failure to make any restitution payment to any client is an aggravating factor. In the past, we have considered the failure to refund unearned fees or make restitution payments an aggravating factor. See In re Westby , 639 N.W.2d 358, 370 (Minn. 2002), abrogated on other grounds by In re Jones , 834 N.W.2d 671, 680 n.9 (Minn. 2013). More recently, however, we have clarified our law regarding aggravating factors by stating that a lawyer's failure to make restitution to a client "should not be weighed as an aggravating factor because it duplicates the above consideration of the harm caused to [the attorney's] clients," which we have already considered when analyzing the appropriate discipline. Tigue , 900 N.W.2d at 432. As a result, we do not consider it as an aggravating factor.
Third, the Director argues that noncooperation in the public disciplinary proceeding before this court is an aggravating factor. Although we "cannot 'double count' the same acts of noncooperation as both substantive misconduct and an aggravating factor," we may consider Villanueva's failure to cooperate in the public disciplinary proceedings before us as an aggravating factor.[12] In re Hulstrand , 910 N.W.2d 436, 444 (Minn. 2018) (noting that "[n]o double counting occurred" when "[t]he referee considered [an attorney's] noncooperation before the Director filed a petition to be substantive misconduct" and "the referee found that [the attorney's] noncooperation after the initiation of the public disciplinary proceeding was an aggravating factor"); see also In re Taplin , 837 N.W.2d 306, 313 (Minn. 2013) ("[A] lawyer's failure to cooperate after a petition is filed may be considered an aggravating factor for the misconduct in the petition.").
Finally, because Villanueva did not respond to the petition or appear in any manner in these proceedings, no mitigating factors are considered. See In re Matson , 889 N.W.2d 17, 25 (Minn. 2017) ("Because [the attorney] did not file a response and we have deemed the allegations in the petitions admitted, he may not now raise mitigating factors.").
Other cases
We "consider prior cases with similar misconduct for guidance."
*825 Voss , 830 N.W.2d at 878. "Here, based on the intentional misappropriation of client funds alone, our precedent supports the sanction of disbarment." In re Rambow , 874 N.W.2d 773, 778 (Minn. 2016). Villanueva misappropriated approximately $9,390 from four clients, and no mitigating factors are present.
Villanueva also committed significant misconduct in addition to the misappropriation of client funds. We have disbarred attorneys for cumulative misconduct similar to that committed by Villanueva. See, e.g. , Sayaovong , 909 N.W.2d at 578-79, 584 (disbarring attorney for misappropriating client funds on one occasion, failing to return unearned fees, engaging in a pattern of abandonment and neglect involving five clients, engaging in the unauthorized practice of law, and failing to cooperate with the Director); Voss , 830 N.W.2d at 869-73, 880 (disbarring attorney for, among other things, misappropriating $12,400 in client funds, neglecting client matters and failing to communicate with clients, failing to return unearned fees, and failing to cooperate with the Director's investigation); Lundeen , 811 N.W.2d at 605-08, 609 (disbarring attorney for, among other things, misappropriating $7,800 in client funds, neglecting client matters, engaging in the unauthorized practice of law, and failing to cooperate with the Director).
Given the severity of Villanueva's misconduct, disbarment is the appropriate discipline.
CONCLUSION
Accordingly, respondent Israel Esquivel Villanueva is disbarred from the practice of law as a foreign legal consultant in the State of Minnesota, effective on the date of this opinion. Villanueva shall pay $900 in costs under Rule 24(a), RLPR, and comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals).
Disbarred.
Concurring, Thissen, J.
CONCURRENCE

Villanueva was not licensed from July 11, 2015, to March 16, 2016.

Villanueva's client-related misconduct involved the following clients: W.K. and his spouse, Minnesota residents, retained Villanueva to help retrieve and distribute property of their murdered son in Mexico; J.C.C., a Minnesota resident, retained Villanueva to help in his divorce matter in Mexico; S.G., a Florida resident, retained Villanueva to establish paternity of her child's biological father in Mexico; A.L., president of a Texas trucking company, retained Villanueva to obtain temporary work visas for his employees; J.G.M., a Minnesota resident, retained Villanueva to represent him in an adoption proceeding in Mexico; E.P.C., a Minnesota resident, retained Villanueva to represent her in marriage dissolution proceedings in Mexico; Y.V.J., a Minnesota resident, retained Villanueva to register a deed to Mexican real estate; and U.L.R., a Minnesota resident, retained Villanueva to obtain authorization from a Mexico court to process a Mexican passport for his minor child.

A lawyer must "promptly pay or deliver to the client ... as requested the funds ... in the possession of the lawyer ... which the client ... is entitled to receive." Minn. R. Prof. Conduct 1.15(c)(4). A lawyer "[u]pon termination of representation" must "refund[ ] any advance payment of fees ... that ha[ve] not been earned." Minn. R. Prof. Conduct 1.16(d). A lawyer must not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

"A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction ...." Minn. R. Prof. Conduct 5.5(a). A foreign legal consultant may "render legal services in [Minnesota]" but "shall not conduct any activity or render any services constituting the practice of the law of the United States." Rule 11(E)(1), Admission Rules.

"A lawyer who is not admitted to practice in [Minnesota] shall not ... represent that the lawyer is admitted to practice in [Minnesota]." Minn. R. Prof. Conduct 5.5(b)(2).

"A lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal ...." Minn. R. Prof. Conduct 3.4(c).

"[A] lawyer shall abide by a client's decisions concerning the objectives of representation ...." Minn. R. Prof. Conduct. 1.2(a). "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct. 1.3. "A lawyer shall ... keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1.4(a)(3)-(4). "[A] lawyer may withdraw from representing a client if ... withdrawal can be accomplished without material adverse effect on the interests of the client ...." Minn. R. Prof. Conduct 1.16(b)(1). "Upon termination of the representation, a lawyer shall ... surrender[ ] papers and property to which the client is entitled ...." Minn. R. Prof. Conduct 1.16(d).

"[A] lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer ...." Minn. R. Prof. Conduct 5.3(b).

"A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal ...." Minn. R. Prof. Conduct 3.3(a)(1). "In the course of representing a client, a lawyer shall not knowingly making a false statement of fact or law." Minn. R. Prof. Conduct 4.1.

As of the filing date of the petition, Villanueva had failed to respond to four notices of investigation dated March 1, March 9, April 12, and June 20, 2018; and he failed to respond to six letters from the Director dated March 2, March 6 (two letters), April 30 (two letters) and July 23, 2018.

"[A] lawyer ... shall not ... knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority ...." Minn. R. Prof. Conduct 8.1(b). "It shall be the duty of any lawyer who is the subject of an investigation or proceeding commenced under these Rules to cooperate with ... the Director, or the Director's staff ...." Rule 25, RLPR.

We note that noncooperation in the public disciplinary proceedings is distinct from noncooperation during the Director's investigation. We have said that noncooperation in the Director's investigation cannot be "double-counted," and here we consider it as a violation rather than an aggravating circumstance. See In re Taplin , 837 N.W.2d 306, 313 (Minn. 2013).